TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

ANDREW S. COGHLAN (CA Bar No. 313332)
andrew.coghlan@usdoj.gov
Environmental Defense Section
SEAN C. DUFFY (NY Bar No. 4103131)
sean.c.duffy@usdoj.gov
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044
Ph: (202) 532-3252 (Coghlan); Ph: (202) 305-0445 (Duffy)

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS B., a minor, by and through her guardian, G.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | No. 2:23-cv-10345-MWF-AGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT (ECF No. 1)**<br><br>Date: April 29, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

**TO THE HONORABLE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on April 29, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled Court located at 350 West First Street, Courtroom 5A, Los Angeles, California 90012, Defendants, the United States of America, the United States Environmental Protection Agency, and

Michael Regan in his official capacity as Administrator of the Environmental Protection Agency, will move the Court to dismiss the Complaint for Declaratory Relief (ECF No. 1) in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The jurisdictional grounds for dismissing the complaint are that: (1) Plaintiffs' claims are barred by sovereign immunity; (2) Plaintiffs lack Article III standing to bring this suit; and (3) the Complaint fails to assert a justiciable controversy. In addition, the claims should be dismissed because the Complaint fails to state cognizable claims based on (1) the Due Process Clause of the Fifth Amendment; (2) the equal protection component of the Due Process Clause of the Fifth Amendment; and (3) the Take Care Clause of Article II, § 3.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 13, 2024.

Dated: March 15, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General
United States Deparment of Justice
Environment and Natural Resources Division

Of Counsel:

DANIEL CONRAD
United States Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Ave., NW

Washington, D.C. 20460

*/s/ Sean C. Duffy*
ANDREW S. COGHLAN
Environmental Defense Section
SEAN C. DUFFY
Natural Resources Section
Trial Attorneys
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044
Ph: (202) 532-3252 (Coghlan)
Ph: (202) 305-0445 (Duffy)
andrew.coghlan@usdoj.gov
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

ANDREW S. COGHLAN (CA Bar No. 313332)
andrew.coghlan@usdoj.gov
Environmental Defense Section
SEAN C. DUFFY (NY Bar No. 4103131)
sean.c.duffy@usdoj.gov
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044
Ph: (202) 532-3252 (Coghlan); Ph: (202) 305-0445 (Duffy)

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS B., a minor, by and through her guardian, G.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | No. 2:23-cv-10345-MWF-AGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date: April 29, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

# TABLE OF CONTENTS

Introduction ......................................................................................................... 1

BACKGROUND ................................................................................................. 1

STANDARD OF REVIEW .................................................................................. 2

ARGUMENT ....................................................................................................... 3

    I.    The Court Should Dismiss the Complaint under Rule 12(b)(1)
          for Lack of Subject Matter Jurisdiction ................................................. 3

          A.    Plaintiffs' suit is barred by sovereign immunity ........................ 4

          B.    Plaintiffs lack Article III standing to bring this suit .................. 7

          C.    The Complaint fails to assert a justiciable controversy ........... 11

    II.    The Court Should Dismiss the Complaint under Rule 12(b)(6)
          Because it Fails to State Cognizable Claims ...................................... 13

          A.    Plaintiffs have not alleged any cognizable claim under the
               Due Process Clause .................................................................. 13

          B.    The Complaint fails to allege a cognizable equal
               protection claim ........................................................................ 16

          C.    Plaintiffs have not stated a claim under the Take Care
               Clause ....................................................................................... 19

Conclusion ......................................................................................................... 20

1

# TABLE OF AUTHORITIES

2

3                                                                          Page(s)

4  **Cases**

5  *Armstrong v. Exceptional Child Center, Inc.*,
6      575 U.S. 320 (2015)...................................................................20

7  *Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)...............................................................3, 19

8  *Badgerow v. Walters*,
9      591 U.S. 1 (2022)........................................................................2

10 *Baker v. Carr*,
      369 U.S. 186 (1962)...................................................................12

11

12 *Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007)....................................................................3

13

14 *Brnovich v. Biden*,
      630 F. Supp. 3d 1157 (D. Ariz. 2022) ....................................20

15 *Brownell v. Ketcham Wire & Mfg. Co.*,
16     211 F.2d 121 (9th Cir. 1954) .....................................................4

17 *California Dump Truck Owners Ass'n v. Nichols*,
18     784 F.3d 500 (9th Cir. 2015) ................................................5, 6

19 *City and Cnty. of San Francisco v. U.S. Postal Serv.*,
20     546 Fed. App'x 697 (9th Cir. 2013) .......................................16

21 *City of Cleburne v. Cleburne Living Ctr.*,
      473 U.S. 432 (1985)...................................................................16

22 *City of Columbus v. Trump*,
23     453 F. Supp. 3d 770 (D. Md. 2020)........................................20

24 *Clapper v. Amnesty International USA*,
25     568 U.S. 398 (2013).....................................................................8

26 *Clean Air Council v. United States*,
      362 F. Supp. 3d 237 (E.D. Pa. 2019) ................................9, 15

27

28 *Collins v. City of Harker Heights, Tex.*,
      503 U.S. 115 (1992)...................................................................15

*Cunningham v. Beavers*,
 858 F.2d 269 (5th Cir. 1988) ...............................................................18

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006)......................................................................12, 13

*Dalton v. Specter*,
 511 U.S. 462 (1994)......................................................................19, 20

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ..................................................................3

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*,
 489 U.S. 189 (1989).............................................................................15

*Dunn & Black, P.S. v. United States*,
 492 F.3d 1084 (9th Cir. 2007) ................................................................4

*Ely v. Velde*,
 451 F.2d 1130 (4th Cir. 1971) ..............................................................14

*F.D.I.C. v. Meyer*,
 510 U.S. 471 (1994).................................................................................4

*FCC v. Beach Commc'ns, Inc.*,
 508 U.S. 307 (1993)......................................................................18, 19

*Gabree v. King*,
 614 F.2d 1 (1st Cir. 1980) ....................................................................18

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
 527 U.S. 308 (1999).............................................................................13

*Guaranty Trust Co. v. York*,
 326 U.S. 99 (1945)...............................................................................13

*Guertin v. Michigan*,
 912 F.3d 907 (6th Cir. 2019) ................................................................14

*Hallstrom v. Tillamook Cnty.*,
 493 U.S. 20 (1989).................................................................................7

*Hallstrom v. Tillamook Cnty.*,
 844 F.2d 598 (9th Cir. 1987) ..................................................................7

*Helping Hand Tools v. EPA*,
 848 F.3d 1185 (9th Cir. 2016) ................................................................5

*Holloman v. Watt*,
   708 F.2d 1399 (9th Cir. 1983) ................................................................. 4

*Jachetta v. United States*,
   653 F.3d 898 (9th Cir. 2011) ................................................................... 4

*Juliana v. United States*,
   217 F. Supp. 3d 1224 (D. Or. 2016) ...................................................... 15

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ............................... 1, 8, 9, 10, 12, 15, 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................... 2

*Lake v. City of Southgate*,
   No. 16-10251, 2017 WL 767879 (E.D. Mich. Feb. 28, 2017) ............... 14, 15

*Lane v. Pena*,
   518 U.S. 187 (1996) ............................................................................... 4

*Las Americas Immigrant Advoc. Ctr. v. Biden*,
   571 F. Supp. 3d 1173 (D. Or. 2021) ...................................................... 20

*Lazy Y Ranch v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ................................................................. 16

*Lehnhausen v. Lake Shore Auto Parts Co.*,
   410 U.S. 356 (1973) ............................................................................... 18

*Lindsley v. Natural Carbonic Gas Co.*,
   220 U.S. 61 (1911) ................................................................................. 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................... 3, 7, 12

*M.S. v. Brown*,
   902 F.3d 1076 (9th Cir. 2018) ............................................................... 8

*Mass. Bd. of Ret. v. Murgia*,
   427 U.S. 307 (1976) ......................................................................... 17, 18

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ............................................................................... 10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ........................................................................... 5, 7

*Matter of E. Coast Foods, Inc.*,
   80 F.4th 901 (9th Cir. 2023) ...................................................................3

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ................................................................2

*Meland v. Weber*,
   2 F.4th 838 (9th Cir. 2021) ....................................................................3

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
   453 U.S. 1 (1981).................................................................................14

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1866) ...............................................................20

*Missouri v. United States*,
   109 F.3d 440 (8th Cir. 1997) .................................................................6

*Nat'l Sea Clammers Ass'n v. City of New York*,
   616 F.2d 1222 (3d Cir. 1980) ..............................................................14

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017) ...............................................................4

*Nunez by Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir. 1997) ...............................................................18

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211 (1995)............................................................................12

*Polanco v. Diaz*,
   76 F. 4th 918 (9th Cir. 2023) ...............................................................15

*Raines v. Byrd*,
   521 U.S. 811 (1997)..............................................................................8

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019)........................................................................12

*SF Chapter of A. Philip Randolph Inst. v. U.S. EPA*,
   No. C 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008)............13, 14

*Sierra Club v. Wheeler*,
   956 F.3d 612 (D.C. Cir. 2020)...............................................................7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)................................................................................9

*Town of Chester v. Laroe Estates, Inc.*,
 581 U.S. 433 (2017)...................................................................8

*United States v. Carolene Prods. Co.*,
 304 U.S. 144 (1938).................................................................17

*United States v. Flores-Villar*,
 536 F.3d 990 (9th Cir. 2008) ...................................................18

*United States v. Mitchell*,
 463 U.S. 206 (1983)...................................................................4

*Vieth v. Jubelirer*,
 541 U.S. 267 (2004).............................................................11, 12

*Virginia v. United States*,
 74 F.3d 517 (4th Cir. 1996) ....................................................5, 6

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
 529 U.S. 765 (2000)..................................................................12

*Warth v. Seldin*,
 422 U.S. 490 (1975)...............................................................2, 3

*Wash. Env't Council v. Bellon*,
 732 F.3d 1131 (9th Cir. 2013) ...................................1, 10, 12, 13

*Washington v. Glucksberg*,
 521 U.S. 702 (1997).............................................................13, 14

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990)...............................................................7, 8

**Statutes**

28 U.S.C. § 1331 ......................................................................4

28 U.S.C. § 2201 ......................................................................4

28 U.S.C. § 2202 ....................................................................11

42 U.S.C. § 7604 ......................................................................6

42 U.S.C. § 7604(a) ..................................................................7

42 U.S.C. § 7607(b)(2) ..............................................................7

42 U.S.C. § 7607(d)(9)(B) .........................................................6

42 U.S.C. §§ 7408-7412 ............................................................5

5 U.S.C. § 702 .....................................................................4, 5

U.S. Const. art. III, § 1 ........................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................2, 3

Fed. R. Civ. P. 12(b)(6) ...............................................3, 13, 19

**Other Authorities**

Exec. Order No. 12,866, 58 Fed. Reg. 51735 (Sept. 30, 1993) ............................16

Exec. Order No. 14,008, 86 Fed. Reg. 7619 (Jan. 27, 2021) ………………………1

**<u>Introduction</u>**

The climate crisis is an urgent problem, and the Executive Branch is taking a wide range of steps to address it, across many agencies in many different forms. *See generally* Exec. Order 14,008, Tackling the Climate Crisis at Home and Abroad, 86 Fed. Reg. 7619 (Jan. 27, 2021). While Plaintiffs may challenge discrete government actions (or inaction) as part of this response, their demand for changes to the government's response to climate change in its entirety "must be made to the political branches or to the electorate at large" rather than in district court. *Juliana v. United States*, 947 F.3d 1159, 1175 (9th Cir. 2020). Courts may act only where "granted power to do so by the Constitution," *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013), and the district court lacks that power here for multiple reasons, including that plaintiffs have not identified a valid waiver of sovereign immunity, shown Article III standing, or asserted a justiciable controversy. Even if Plaintiffs could overcome threshold jurisdictional barriers, they have failed to state a claim as to each of the claims they assert—under the Due Process Clause of the Fifth Amendment, the equal protection component of the Due Process Clause, and the Take Care Clause of Article II, § 3. For all of these reasons, the Court should dismiss this case.

## BACKGROUND

Plaintiffs are a group of minors—between the ages of 8 and 17—who reside in California. Complaint for Declaratory Relief and Further Relief as Warranted ¶¶ 24-99, ECF No. 1 ("Compl."). They filed this Complaint on December 10, 2023, naming as defendants the United States, the United States Environmental Protection Agency, and Michael Regan in his official capacity as EPA Administrator (collectively, the "Defendants"). Plaintiffs allege that EPA exercises a measure of control over the pollution that enters the Nation's air—particularly climate pollution caused by third parties' release of emissions from fossil fuels into

the atmosphere—and that these Plaintiffs have experienced harms as a result of that pollution. Compl. ¶¶ 1-4, 10.

Plaintiffs bring five claims asserting violations of the Fifth Amendment Due Process Clause including its equal protection component (Claims I-IV), and the Take Care Clause of Article II, § 3 (Claim V). *Id.* ¶¶ 335-386. To remedy the alleged equal protection violations, Plaintiffs seek declarations that children are a protected class, and that Defendants' conduct deprives Plaintiffs of equal protection of the law by (1) burdening their ability to live and enjoy their lives, (2) discriminating against them via inadequate regulation of climate pollution, and (3) applying discriminatory discount rates or otherwise devaluing children's lives in cost-benefit analyses relating to climate regulations. Compl. 98-99 (Prayers for Relief 1-4). Turning to substantive due process, Plaintiffs seek declarations that "a life-sustaining climate system" is a fundamental right under the Fifth Amendment, and that Defendants have violated that right, as well as Plaintiffs' fundamental right to life, by "allowing life-threatening levels of climate pollution to enter and accumulate in the air." *Id.* at 99 (Prayers for Relief 5-6). Finally, Plaintiffs seek a declaration under the Take Care Clause that EPA exceeded its delegated authority by allowing unsafe levels of climate pollution to enter and accumulate in the Nation's air. *Id.* at 100 (Prayer for Relief 7).

## STANDARD OF REVIEW

"The district courts of the United States are courts of limited jurisdiction, defined (within constitutional bounds) by federal statute." *Badgerow v. Walters*, 591 U.S. 1, 7 (2022). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up). A court reviews a motion to dismiss a complaint for lack of Article III standing under Fed. R. Civ. P. 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Where the jurisdictional attack is facial, the court

determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021). "[A] party must establish an Article III case or controversy before [a court can] exert subject matter jurisdiction." *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023).

A court may also dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (cleaned up). However, a court need not accept as true any legal conclusion set forth in a pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

## I.     The Court Should Dismiss the Complaint under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.

The Court should dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction for at least three reasons. First, the United States has not waived its sovereign immunity to this suit. Second, Plaintiffs lack Article III standing, as binding and indistinguishable precedent establishes. And third, none of

Plaintiffs' claims present a justiciable case or controversy within the meaning of Article III.

### A.   Plaintiffs' suit is barred by sovereign immunity.

The Complaint must be dismissed because Plaintiffs' suit is barred by the United States' sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). A "waiver of sovereign immunity cannot be implied, but 'must be unequivocally expressed in statutory text.'" *Id.* (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). The "terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (cleaned up). And as the parties invoking jurisdiction, Plaintiffs must identify a valid waiver that encompasses their claims. *See Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

Plaintiffs do not, and cannot, carry that burden.[1] The only arguably applicable waiver comes from the Administrative Procedure Act ("APA") and is codified at 5 U.S.C. § 702.[2] There, Congress consented to suits "seeking relief other than money damages and stating a claim that an agency or an officer or employee [of the United States] acted or failed to act in an official capacity or

---

[1] Plaintiffs claim that this Court has jurisdiction under the federal question statute (28 U.S.C. § 1331) and the Declaratory Judgment Act (28 U.S.C. § 2201). Compl. ¶¶ 15-18. But neither of those statutes waives sovereign immunity. *See Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) (no waiver in 28 U.S.C. § 1331; *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954) (28 U.S.C. § 2201 "is not a consent of the United States to be sued").

[2] The Ninth Circuit has held that § 702's waiver applies to "all non-monetary claims" alleging agency misconduct, not just claims plead under the APA. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017).

under color of legal authority." 5 U.S.C. § 702. But § 702 contains two crucial limitations: (1) nothing in that provision "affects other limitations on judicial review"; (2) and § 702 does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Because of those carve-outs, plaintiffs cannot "exploit[]" § 702 "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). That rule controls here.

The Clean Air Act ("CAA" or "Act") "establishes a comprehensive program for controlling and improving air quality." *Helping Hand Tools v. EPA*, 848 F.3d 1185, 1190 (9th Cir. 2016). It delegates implementation authority to EPA. *See, e.g.*, 42 U.S.C. §§ 7408-7412. And it authorizes judicial review of EPA's exercise of statutory authority, but only subject to certain limitations. Because Plaintiffs disregard those limitations, their suit thus falls outside § 702's qualified waiver of sovereign immunity. And, because no other waiver authorizes this suit, the Court should dismiss the suit on sovereign immunity grounds.

As relevant here, "any" challenge to final EPA action under the CAA must be brought in circuit court within 60 days of the grounds giving rise to suit. 42 U.S.C. § 7607(b)(1). That mandate "channels review of final EPA action exclusively to the courts of appeals, *regardless of how the grounds for review are framed*." *California Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 506 (9th Cir. 2015) (quoting *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996)). It thus reaches suits that "effectively, if not facially, challenge []" EPA final action, including on constitutional grounds. *Id.* at 506; *see also id.* at 506–07 (discussing constitutional challenges to EPA action under the CAA). Plaintiffs' suit does just that. Plaintiffs note, correctly, that agencies "have only those powers given to them by Congress." Compl. ¶ 115 (citation and internal quotation marks omitted). They identify the CAA (and only the CAA) as the source of EPA's "delegated federal

authority to regulate air pollution." *Id.* ¶ 114. And they take issue with how EPA has exercised that authority in "setting national pollution control standards" and "regulating pollution from stationary sources like power plants and mobile sources like motor vehicles and airplanes." *Id.* ¶ 120. But EPA does those things by issuing regulations or otherwise taking final actions. Thus, by alleging that "EPA forged an unlawful path by authorizing . . . climate pollution," *id.* ¶ 9, Plaintiffs necessarily take aim at those final agency actions. There is, in short, no way that the "constitutional challenges of this lawsuit . . . can be[] separated from a challenge to final EPA action." *Missouri v. United States*, 109 F.3d 440, 442 (8th Cir. 1997). This Court lacks jurisdiction to consider such a challenge.

Plaintiffs' inability to proceed here does not deprive them of meaningful judicial review. They are free to press constitutional claims in a proper petition for review of EPA action in circuit court, which can "reverse" EPA action "found to be contrary to constitutional right, power, privilege, or immunity." 42 U.S.C. § 7607(d)(9)(B); *see also Virginia*, 74 F.3d at 523 (noting that 42 U.S.C. § 7607(b)(1) creates "no impediment to the adjudication of constitutional issues"). And if Plaintiffs believe that EPA acts under the CAA without relying on the best available science, Compl. ¶¶ 307-25, then they are likewise free to raise those claims through the process that Congress prescribed. But they cannot evade limitations on suit that Congress imposed to ensure "speedy review of EPA rules and final actions" in circuit courts, and to minimize "duplicative or piecemeal litigation, and the risk of contradictory decisions." *California Dump Truck Owners Ass'n*, 784 F.3d at 511 (cleaned up). Those limitations define the scope of the United States' consent to suit and thus the scope of this Court's jurisdiction. This suit falls outside that scope and the Court should therefore dismiss.

Plaintiffs get no further if their suit is construed as a challenge to EPA inaction. Suits alleging that EPA failed to act, or unreasonably delayed in acting, under the CAA are authorized under 42 U.S.C. § 7604. But such suits may proceed

only if the challengers first provide EPA with notice of the alleged violation. 42 U.S.C. § 7604(a), (b)(2). And Plaintiffs have not satisfied the "jurisdictional prerequisite" of prior notice. *Hallstrom v. Tillamook Cnty.*, 844 F.2d 598, 600 (9th Cir. 1987), *aff'd on other grounds*, 493 U.S. 20 (1989) (citation omitted). Their suit thus disregards limitations on judicial review that Congress imposed "to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989).

In sum, whether Plaintiffs challenge EPA action or inaction under the CAA, "the CAA *is* 'addressed to the type of grievance'" that they seek "to assert." *Sierra Club v. Wheeler*, 956 F.3d 612, 619 (D.C. Cir. 2020) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 216). And "when Congress has dealt in particularity with a claim and has intended a specific remedy—including its exceptions—to be exclusive, that is the end of the matter." *Id.* (cleaned up). Plaintiffs cannot "end-run" congressionally imposed limitations on judicial review. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 216. Sovereign immunity therefore bars this suit, and the Court should dismiss it for lack of subject-matter jurisdiction.

**B.   Plaintiffs lack Article III standing to bring this suit.**

To demonstrate Article III standing, Plaintiffs must establish that (1) they "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Defs. of Wildlife*, 504 U.S. at 560-61 (1992) (cleaned up). Article III standing "serves to identify those disputes which are appropriately resolved through the judicial process," *Whitmore v.*

*Arkansas*, 495 U.S. 149, 155 (1990), and to "prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty International USA*, 568 U.S. 398, 408 (2013). In keeping with that purpose, a court's inquiry must be "especially rigorous when reaching the merits of the dispute would force [it] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

To establish the third element of standing—redressability—"plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana*, 947 F.3d at 1170 (citing *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018)). A plaintiff, moreover, must make this showing for "each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (cleaned up).

The redressability analysis here is controlled by the Ninth Circuit's decision in *Juliana*. There, much as here, a group of children and young adults asserted that the government had violated their right to a "climate system capable of sustaining human life." *Juliana*, 947 F.3d at 1164. The Court agreed that two of the plaintiffs had identified cognizable harms resulting from climate change, and it concluded that those harms could be traced to the government conduct that the plaintiffs challenged. *Id.* at 1168-69. Still, the Court concluded that these plaintiffs' asserted harms were not redressable by an Article III court. *Id.* at 1170. That is true here as well. Thus, under the Ninth Circuit's binding precedent, the Complaint must be dismissed for lack of standing.

As *Juliana* establishes, Plaintiffs cannot make the two-part showing for redressability for either form of relief sought in the Complaint. Beginning with Plaintiffs' request for a declaratory judgment, Compl. 98-100 (Prayers for Relief 1-7), the Ninth Circuit in *Juliana* concluded that an identical request for a declaration that the government is violating the Constitution was not "substantially likely to

redress [plaintiffs'] injuries," and thus could not satisfy Article III. *Juliana*, 947 F.3d at 1170. The Court found that while a declaration may be "likely to benefit the plaintiffs psychologically, [it] is unlikely by itself to remediate their alleged injuries absent further court action." *Id.*; *see also Clean Air Council v. United States*, 362 F. Supp. 3d 237, 249 (E.D. Pa. 2019) (addressing similar claims and concluding that "[declaratory] relief will not redress the injuries Plaintiffs have already suffered"). And because any "further court action" would have impermissibly embroiled a federal court in ongoing oversight of the elected branches' response to climate change, all that was left for the plaintiffs was "psychic satisfaction," which "is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). On these bases, the Ninth Circuit concluded that the plaintiffs in *Juliana* lacked Article III standing to seek declaratory relief. That ruling is dispositive here because the declaration Plaintiffs seek in this case is not materially different from the declaration sought in *Juliana*.[3]

It makes no difference that Plaintiffs now speculate that a declaratory judgment in this case would induce the government to "begin to abate climate pollution" in the way they desire. *See* Compl. ¶¶ 329-331. This theory is foreclosed by the *Juliana* court's statement that a declaratory judgment "is unlikely by itself to remediate their alleged injuries absent further court action."[4] *Juliana*, 947 F.3d

---

[3] Indeed, Plaintiffs describe the *Juliana* case as "closely related," and arising "from the same or a closely related transaction, happening, or event." Notice of Related Cases 1, ECF No. 5. They also state that the two cases "call for determination of the same or substantially related . . . questions of law and fact." *Id.*

[4] After concluding that the federal judiciary lacks jurisdiction over the plaintiffs' claims, the Ninth Circuit in *Juliana* remanded the case to the district court "with instructions to dismiss for lack of article III jurisdiction." *Juliana*, 947 F.3d at 1175. On remand, the district court permitted Plaintiffs to file an amended complaint that purports to create Article III jurisdiction on the same flawed theory

at 1170. But in any event, induced regulatory actions would not adequately redress Plaintiffs' climate injuries for the same reason the Ninth Circuit was "skeptical" that even the broad injunction sought in *Juliana* was "substantially likely to redress [plaintiffs'] injuries." *Id.* at 1170-71. The plaintiffs in *Juliana* sought an injunction "requiring the government not only to cease permitting, authorizing, and subsidizing fossil fuel use, but also to prepare a plan subject to judicial approval to draw down harmful emissions." *Id.* at 1170. Notwithstanding the extraordinary breadth of the requested injunction, the Ninth Circuit explained that the requested relief would at best ameliorate, but not solve, the plaintiffs' climate injuries given the complexity and global nature of the problem. *Id.* at 1171. And it concluded on that basis that the requested injunction was not substantially likely to redress the plaintiffs' climate-based injuries. *See id.* (explaining that the relaxed redressability standard Plaintiffs sought to invoke was unavailable to them because they asserted substantive claims rather than procedural rights claims) (citing *Massachusetts v. EPA*, 549 U.S. 497, 525-26 (2007)); *see also Bellon*, 732 F.3d at 1147 ("Plaintiffs are not sovereign states and thus the [Supreme] Court's standing analysis [in *Massachusetts v. EPA*] does not apply.").

Plaintiffs cannot plausibly contend that the declaratory relief sought here would redress their climate-based injuries more fully than the broad injunction sought—and deemed insufficient—in *Juliana*. But even assuming a declaratory judgment could theoretically provide such redress, Plaintiffs still would not

---

that the Court of Appeal rejected. The district court then largely denied the government's motion to dismiss the amended complaint and refused to certify its order permitting amendment or its order on the motion to dismiss. The government petitioned the Ninth Circuit for a writ of mandamus. Pet. for a Writ of Mandamus and Opposed Mot. for a Stay of Proceedings, *United States Dist. Ct. for the Dist. of Or. v. Juliana*, No. 24-684 (9th Cir. Feb. 2, 2024). The Court of Appeals has ordered briefing on the petition. Order, *United States Dist. Ct. for the Dist. of Or. v. Juliana*, No. 24-684 (9th Cir. Feb. 29, 2024).

"surmount the remaining hurdle" in the redressability test—i.e., "establishing that the specific relief they seek is within the power of an Article III court." *Id.* As with the expansive injunction sought in *Juliana*, the unbounded declaration that Plaintiffs seek here is not within the power of a federal court to award because it would amount to judicial assessment and oversight of EPA unmoored from the mechanisms for judicial review that Congress has enacted.

Turning to the remainder of the Prayer for Relief, Plaintiffs generally request, pursuant to 28 U.S.C. § 2202, "such other and further relief as the Court deems just and proper to redress" whatever constitutional violations the Court may declare. Compl. 100 (Prayer for Relief 8). While the Prayer for Relief does not explain what this additional relief may be, elsewhere in the Complaint Plaintiffs explain that they would seek "further relief . . . to enforce" any declaratory judgment this Court may issue. *Id.* ¶¶ 11, 341, 355, 366, 376, 386. This additional requested relief does not change the conclusions above, because an order enforcing a declaratory judgment would fail to redress Plaintiffs' claims for the same reasons the injunction sought in *Juliana* failed—any injunction would necessarily be either too narrow to provide effective redress, or so broad as to fall beyond the power of an Article III court.

In sum, Plaintiffs have not shown that this lawsuit satisfies the test for standing. Accordingly, the Court should dismiss the case for lack of Article III jurisdiction.

### C.    <u>The Complaint fails to assert a justiciable controversy.</u>

Aside from the fact that this suit is barred by the United States' sovereign immunity, and that Plaintiffs lack standing, this action should be dismissed because it simply is not one that a federal court may entertain consistent with the Constitution. "Sometimes, . . . the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Vieth*

*v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion). "In such a case the claim is said to . . . be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2494 (2019) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). That is the case here.

The "judicial Power of the United States," U.S. CONST. art. III, § 1, is "one to render dispositive judgments" in "cases and controversies" as defined by Article III. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (citation omitted). That power can "come into play only in matters that were the traditional concern of the courts at Westminster" and only in "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) (citations omitted). "If a dispute is not a proper case or controversy, the courts have no business deciding it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

Plaintiffs' suit is not a case or controversy cognizable under Article III. They ask the Court to review and assess all of Defendants' actions (and inaction) relating to climate change and then to pass on the comprehensive constitutionality of all of those actions (and inaction). Compl. ¶¶ 335-386. Federal courts cannot use the "judicial Power" to perform such a sweeping policy review—and for good reason: the Constitution entrusts to Congress and the Executive Branch the power to enact and implement comprehensive government-wide measures of the sort sought by Plaintiffs. These functions are not the province of Article III courts. The "Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Defs. of Wildlife*, 504 U.S. at 559-60. As the *Juliana* court recognized, plaintiffs may challenge discrete government actions (or inaction), but their demand for changes to the government's overall response to climate change "must be made to the political branches or to the electorate at large" rather than in district court. *Juliana*, 947 F.3d at 1175. Recognizing these

limits of Article III jurisdiction does not "discount the gravity" of climate change, *Bellon*, 732 F.3d at 1142; it simply observes the constitutional boundaries of the different branches of government.

Nor is the review that Plaintiffs seek within the Court's equitable powers. A federal court's equitable powers are "subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery." *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945). The relief requested by Plaintiffs is plainly not of the sort "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). At bottom, this dispute over American energy and environmental policy "is not a proper case or controversy," either at law or in equity, and "the courts have no business deciding it." *Cuno*, 547 U.S. at 341. Accordingly, for this reason as well, the Complaint must be dismissed for lack of jurisdiction.

## II. The Court Should Dismiss the Complaint under Rule 12(b)(6) Because it Fails to State Cognizable Claims.

The Court should also dismiss the Complaint because it fails to state any claim for which relief could be granted.

### A. <u>Plaintiffs have not alleged any cognizable claim under the Due Process Clause.</u>

The government does not dispute that climate change poses a serious threat, nor that any solution to addressing climate change will require the active involvement of the federal government. The U.S. Constitution, however, does not explicitly recognize a right to a life-sustaining climate. Accordingly, Plaintiffs' claims in Count III and IV, which attempt to locate such a right in the Due Process Clause, fail on the merits.

Count IV must be dismissed because there is no implied due process right to a "life-sustaining climate system." The Supreme Court has repeatedly instructed courts considering novel due process claims to "exercise the utmost care whenever

1    . . . asked to break new ground in this field, . . . lest the liberty protected by the Due
2    Process Clause be subtly transformed" into judicial policy preferences. *Washington*
3    *v. Glucksberg*, 521 U.S. 702, 720 (1997) (cleaned up). More specifically, the
4    Supreme Court has "regularly observed that the Due Process Clause specially
5    protects those fundamental rights and liberties which are, objectively, deeply
6    rooted in this Nation's history and tradition." *Id.* at 720-21 (cleaned up). Plaintiffs'
7    request that this Court recognize an implied fundamental right to a life-sustaining
8    climate system, Compl. ¶ 368, contradicts that directive, because such a purported
9    right is without basis in the Nation's history or tradition.

10        The proposed right to a "life-sustaining climate system" is nothing like any
11   fundamental right ever recognized by the Supreme Court. The state of the climate
12   is a public and generalized issue, and so interests in the climate are unlike the
13   particularized personal liberty or personal privacy interests of individuals the
14   Supreme Court has previously recognized as being protected by fundamental
15   rights. And courts that have considered proposals to establish a healthy
16   environment or climate as rights protected by the U.S. Constitution have rejected
17   those proposals. *See, e.g., Guertin v. Michigan*, 912 F.3d 907, 921-22 (6th Cir.
18   2019) (The "Constitution does not guarantee a right to live in a contaminant-free,
19   healthy environment."); *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d
20   1222, 1237-38 (3d Cir. 1980) (finding it "established in this circuit and elsewhere
21   that there is no constitutional right to a pollution-free environment"), *vacated on*
22   *other grounds sub nom. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers*
23   *Ass'n*, 453 U.S. 1 (1981); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971)
24   (observing that arguments "in support of a constitutional protection for the
25   environment" have not "been accorded judicial sanction"); *cf. Lake v. City of*
26   *Southgate*, No. 16-10251, 2017 WL 767879, at *4 (E.D. Mich. Feb. 28, 2017)
27   ("[W]henever federal courts have faced assertions of fundamental rights to a
28   'healthful environment' or to freedom from harmful contaminants, they have

invariably rejected those claims."); *SF Chapter of A. Philip Randolph Inst. v. U.S. EPA*, No. C 07-04936 CRB, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008) (rejecting asserted rights to be free from climate change pollution and to have a certain quality of life).[5]

Making environmental policy involves balancing "competing social, political, and economic forces." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992). The Constitution envisions that such balancing is distinctly the province of the Executive and Legislative branches of government, not that of the federal courts.

Count III also must be dismissed because Plaintiffs have failed to state claims as to any other alleged fundamental rights (i.e., to bodily integrity and health, the pursuit of happiness, enjoyment of life, and safety). At root, the due process claim in Count III is predicated on the proposition that EPA has not protected Plaintiffs' lives or ensured Plaintiffs' liberty by sufficiently regulating climate pollution. However, the Due Process Clause does not impose an affirmative duty on the government to take actions "to protect a person's life, liberty, or property; it acts as a 'limitation on the State's power to act' rather than a 'guarantee of certain minimal levels of safety and security.'" *Polanco v. Diaz*, 76 F. 4th 918, 926 (9th Cir. 2023) (quoting *DeShaney v. Winnebago Cnty. Dep't of*

---

[5] An outlier among this collection of cases is the district court decision in *Juliana v. United States*, 217 F. Supp. 3d 1224 (D. Or. 2016), *rev'd and remanded*, 947 F.3d 1159 (9th Cir. 2020) (holding that there is a fundamental right to a climate system capable of sustaining life). But that decision lacks persuasive weight, especially because, as the Ninth Circuit ultimately held, the district court lacked jurisdiction over the case when it rendered its decision. *Juliana*, 947 F.3d at 1175. And, in any event, other courts have recognized that the district court's decision in *Juliana* was an outlier. *See, e.g.*, *Clean Air Council*, 362 F. Supp. 3d at 250-251 (noting that the "*Juliana* Court certainly contravened or ignored longstanding authority."); *City of Southgate*, 2017 WL 767879, at *4, n.3.

*Social Servs.*, 489 U.S. 189, 195 (1989)). Because Plaintiffs do not allege that EPA itself has emitted climate pollution, they fail to allege facts sufficient to support a claim for relief under Count III.

### B. The Complaint fails to allege a cognizable equal protection claim.

Plaintiffs have similarly failed to state an equal protection claim. The general rule is that government action that classifies certain groups of people differently from others "is presumed to be valid and will be sustained if the classification drawn by the [government action] is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citation omitted); *City and Cnty. of San Francisco v. U.S. Postal Serv.*, 546 Fed. App'x 697, 698 (9th Cir. 2013) (Mem.); *Lazy Y Ranch v. Behrens*, 546 F.3d 580, 588-89 (9th Cir. 2008). This general rule gives way only when a government action burdens a fundamental right protected by the Constitution or uses a suspect classification such as race. Those government actions are subject to heightened scrutiny and will be sustained only if they are suitably tailored to a compelling state interest. *City of Cleburne*, 473 U.S. at 440.

Applying that framework, Plaintiffs' equal protection claims fail at the threshold because none of the EPA actions or inactions contain any age-based classifications. Plaintiffs urge that the use of discounting in the context of regulatory impacts analyses—to weigh the costs and benefits of a policy over time—is "a weapon of intergenerational oppression," Compl. ¶ 278, but they do not allege with particularity that Defendants have applied discounting in a discriminatory fashion. Their contention instead is that the practice of discounting is *per se* discrimination against children that violates the Constitution. That contention is extraordinary given widely accepted principles of basic economics and the lack of any equal protection precedent addressing discounting, despite its ubiquity in the federal rulemaking process. *See* Exec. Order No. 12866, 58 Fed. Reg. 51735 (Sept. 30, 1993) (requiring review by the Office of Information and

Regulatory Affairs (OIRA) within the Office of Management and Budget (OMB) of significant regulatory actions); OMB Circular No. A-4 at 75-82 (Nov. 9, 2023), available at https://www.whitehouse.gov/wp-content/uploads/2023/11/CircularA-4.pdf (explaining the use of discount rates as a standard methodology for measuring costs and benefits of regulatory actions in the context of OIRA review); *see also Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313-314 (1976) (rejecting contention that old age defines a "discrete and insular group" because it "marks a stage that each of us will reach if we live out our normal span.") (cleaned up).

Because Plaintiffs have failed to identify any challenged action that classifies children differently from others, their equal protection claims must fail. But even if the challenged EPA actions did classify children or future generations differently, the equal protection claims would still fail for several reasons. Contrary to Plaintiffs' contentions, strict scrutiny would not apply to the challenged EPA actions and inaction because Plaintiffs cannot show that they are a suspect class in need of extraordinary protection. Plaintiffs contend that "[c]hildren as a class are a prime example of a 'discrete and insular' minority requiring close judicial scrutiny of invidious discrimination." Compl. ¶ 344. But the Supreme Court has declined to treat classifications based on age as suspect and has thus declined to apply heightened scrutiny to government actions that classify by age. In *Massachusetts Board of Retirement v. Murgia*, the Supreme Court explained that "a suspect class is one saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." 427 U.S. at 313 (cleaned up). The Court stated that a suspect class is a "'discrete and insular' group," which the elderly are not because old age "marks a stage that each of us will reach if we live out our normal life span." *Id.* at 313-14 (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152-53 n.4 (1938)).

Consistent with *Murgia*, courts have uniformly rejected Plaintiffs' proposition (Compl. ¶ 344), that youth are a suspect class triggering heightened judicial scrutiny under the Equal Protection Clause. *See United States v. Flores-Villar*, 536 F.3d 990, 998 (9th Cir. 2008) (holding that "age is not a suspect class"); *Cunningham v. Beavers*, 858 F.2d 269, 273 (5th Cir. 1988) ("No cases have ever held, and we decline to hold, that children are a suspect class."). As the First Circuit has explained, young people, though they "have historically been denied full rights of adulthood while shouldering such burdens of citizenship as military service," have not been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness, as to justify searching judicial scrutiny." *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980) (quoting *Murgia*, 427 U.S. at 313) (internal quotation marks and citations omitted).

"Because age is not a suspect classification," *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997), the actions Plaintiffs challenge are subject only to rational basis review, which affords those actions "a strong presumption of validity." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). Under this standard, a court must uphold government action "if there is any reasonably conceivable state of facts that could provide a rational basis" for the action. *Id.* at 313; *see also Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911). Plaintiffs attacking the rationality of government acts bear the burden "to negative every conceivable basis which might support [them]." *Beach Commc'ns*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

The Complaint falls far short of this standard. It states in a conclusory fashion that there is no justification by which the government could satisfy any level of scrutiny (rational basis, intermediate scrutiny, or strict scrutiny) for the EPA actions or alleged failures to act that Plaintiffs purport to challenge in the

Complaint. Compl. ¶ 135. Elsewhere, Plaintiffs generically state that: "There is no rational calculus that supports any decision not to immediately and swiftly control climate pollution to abate the climate crisis," *id.* ¶ 306; "Climate pollution and dangerous air quality serve no rational, legitimate, important, or compelling government purpose," *id.* ¶ 328; and "Defendants' discriminatory conduct in allowing dangerous levels of climate pollution . . . and in discounting the value of Children's lives is not rationally related to any legitimate government interest," *id.* ¶ 353. Such legal assertions bear no weight in a Rule 12(b)(6) analysis. *Iqbal*, 556 U.S. at 678.

Moreover, these generic statements are not directed at any particular agency action; they are instead directed at EPA's actions (or inaction) under the CAA in the aggregate. Because Plaintiffs fail to direct a specific argument toward any discrete regulatory action or inaction, they necessarily fail "to negative every conceivable basis which might support" each such action or inaction. *Beach Commc'ns,* 508 U.S. at 315 (quoting *Lake Shore Auto Parts Co.*, 410 U.S. at 364). But even if Plaintiffs had specifically identified the EPA actions (or inaction) that they challenge under the CAA, their claim would still fail because agency decision making of this kind necessarily reflects a compromise among competing policy goals, as well as resource constraints and other considerations or limitations. *See Juliana*, 947 F.3d at 1172.

Because Plaintiffs have not alleged facts from which the Court could plausibly conclude that the challenged government actions lack a rational basis, *see Iqbal*, 556 U.S. at 678, Counts I and II should be dismissed for failure to state a claim.

### C.  <u>Plaintiffs have not stated a claim under the Take Care Clause.</u>

Finally, Plaintiffs allege that EPA violated the Take Care Clause of Article II, § 3 by "act[ing] far in excess of [its] . . . legal authority" under the CAA. Compl. ¶ 381; *see also id.* ¶¶ 377-86. This ignores the "well established"

distinction between "claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 473-74 (1994). The former simply "are not 'constitutional' claims." *Id.* at 474. That is reason enough to dismiss Count V.

Count V must be dismissed even if Plaintiffs' statutory argument could implicate the Take Care Clause. The Take Care Clause does not furnish a basis for affirmative relief in an Article III court. The Supreme Court has recognized that "the duty of the President . . . to see that the laws are faithfully executed" "is purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866).

In addition, Plaintiffs cannot sue directly under the Take Care Clause because that provision supplies no private right of action. *See, e.g., Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1178 (D. Ariz. 2022) ("separation of powers principles and the Take Care Clause do not provide Plaintiffs with causes of action"); *accord Las Americas Immigrant Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021); *City of Columbus v. Trump*, 453 F. Supp. 3d 770, 800 (D. Md. 2020). So, they must rely instead on a judge-made cause of action that "is the creation of courts of equity." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). But "[t]he power of federal courts of equity," and thus the scope of any implied equitable cause of action, "is subject to express and implied statutory limitations." *Id.* And here, those limitations would include, at minimum, Congress's express limitations on suits challenging EPA action (or inaction) under the CAA. *See supra* Section I(A). Plaintiffs "cannot, by invoking [this Court's] equitable powers, circumvent" those limitations. *Armstrong*, 575 U.S. at 328. Count V therefore would fail even if it passed muster under *Dalton*.

## Conclusion

For all of the reasons explained above, the Court should grant Defendants' motion to dismiss and dismiss Plaintiffs' claims in their entirety.

Dated: March 15, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General
United States Deparment of Justice
Environment and Natural Resources Division

Of Counsel:

DANIEL CONRAD
United States Environmental
Protection Agency
Office of General Counsel
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

*/s/ Sean C. Duffy*
ANDREW S. COGHLAN
Environmental Defense Section
SEAN C. DUFFY
Natural Resources Section
Trial Attorneys
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044
Ph: (202) 532-3252 (Coghlan)
Ph: (202) 305-0445 (Duffy)
andrew.coghlan@usdoj.gov
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

## **Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,841 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 15, 2024               _/s/ Sean C. Duffy_
                                    Sean C. Duffy

                                    _Attorney for Defendants_