TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
ANDREW S. COGHLAN (CA Bar No. 313332)
andrew.coghlan@usdoj.gov
Environmental Defense Section
SEAN C. DUFFY (NY Bar No. 4103131)
sean.c.duffy@usdoj.gov
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044
Ph: (202) 532-3252 (Coghlan); Ph: (202) 305-0445 (Duffy)

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS B., a minor, by and through her guardian, G.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | No. 2:23-cv-10345-MWF-AGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF No. 53)**<br><br>Date: Sept. 16, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

**TO THE HONORABLE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on September 16, 2024 at 10:00 a.m., or as soon as this matter may be heard in the above-entitled Court located at 350 West First Street, Courtroom 5A, Los Angeles, California 90012, Defendants, the United States of America, the United States Environmental Protection Agency, Michael

1    Regan in his official capacity as Administrator of the Environmental Protection

2    Agency, the Office of Management and Budget, and Shalanda D. Young will move

3    the Court to dismiss the First Amended Complaint for Declaratory and Injunctive

4    Relief (ECF No. 53) in its entirety pursuant to Federal Rules of Civil Procedure

5    12(b)(1) and 12(b)(6).  The jurisdictional grounds for dismissing the complaint are

6    that: (1) Plaintiffs lack Article III standing to bring this suit; (2) Plaintiffs' facial

7    challenge to discounting is not ripe; and (3) the Court lacks jurisdiction to consider

8    challenges to EPA's Clean Air Act Regulations.  In addition, the claims should be

9    dismissed because the complaint fails to state cognizable claims based on (1) a

10   violation of a fundamental right; (2) the equal protection component of the Fifth

11   Amendment Due Process Clause; or (3) the Take Care Clause of Article II, § 3.

12         This motion is made following the conference of counsel pursuant to Local

13   Rule 7-3, which took place on July 15, 2024.

14

15   Dated: July 22, 2024

16

17

18   Of Counsel:

19   DANIEL CONRAD

20   United States Environmental
     Protection Agency
21   Office of General Counsel
     1200 Pennsylvania Ave., NW
22   Washington, D.C. 20460

23

24   DANIEL JACOBSON
     General Counsel
25   Office of Management and Budget
     725 17th Street, NW
26   Washington, DC 20503

27

28

|  |  |
|---|---|
| | TODD KIM<br>Assistant Attorney General<br>United States Deparment of Justice<br>Environment and Natural Resources Division |
| | */s/ Andrew S. Coghlan*<br>ANDREW S. COGHLAN<br>Environmental Defense Section<br>SEAN C. DUFFY<br>Natural Resources Section<br>Trial Attorneys<br>Ben Franklin Station, P.O. Box 7611<br>Washington, DC 20044<br>Ph: (202) 532-3252 (Coghlan)<br>Ph: (202) 305-0445 (Duffy)<br>andrew.coghlan@usdoj.gov<br>sean.c.duffy@usdoj.gov |
| | *Attorneys for Defendants* |

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

ANDREW S. COGHLAN (CA Bar No. 313332)
andrew.coghlan@usdoj.gov
Environmental Defense Section
SEAN C. DUFFY (NY Bar No. 4103131)
sean.c.duffy@usdoj.gov
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044
Ph: (202) 532-3252 (Coghlan); Ph: (202) 305-0445 (Duffy)

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS B., a minor, by and through her guardian, G.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | No. 2:23-cv-10345-MWF-AGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF No. 53)**<br><br>Date: September 16, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ..................................................................................... 1

BACKGROUND ........................................................................................ 2

STANDARD OF REVIEW ......................................................................... 4

ARGUMENT ............................................................................................. 5

    I.     Plaintiffs' claims are non-justiciable ............................................ 6

          A.     Plaintiffs lack standing ........................................................ 6

               1.    Plaintiffs' alleged injuries are not fairly traceable to discounting. .................................................................... 7

               2.    Plaintiffs' harms are not redressable. ................................ 10

          B.     Plaintiffs' facial challenge to discounting is not ripe. .............. 11

          C.     The Court lacks jurisdiction to consider challenges to EPA's Clean Air Act Regulations. ........................................... 13

    II.    Plaintiffs have failed to state a claim. ................................................ 13

          A.     The Amended Complaint fails to allege a cognizable equal protection claim. ................................................................ 14

          B.     Plaintiffs have not stated a claim under the Take Care Clause. ............................................................................. 18

CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................5, 18

*Badgerow v. Walters,*
  596 U.S. 1 (2022).......................................................................4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................5

*Brnovich v. Biden,*
  630 F. Supp. 3d 1157 (D. Ariz. 2022) ............................................19

*Cigar Ass'n of Am. v. FDA,*
  5 F.4th 68 (D.C. Cir. 2021)...........................................................3

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985)...................................................................14

*City of Columbus v. Trump,*
  453 F. Supp. 3d 770 (D. Md. 2020) ..............................................19

*City & Cnty. of San Francisco v. U.S. Postal Serv.,*
  546 F. App'x 697 (9th Cir. 2013) ..................................................14

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013).....................................................................6

*Colwell v. Dep't of Health & Hum. Servs.,*
  558 F.3d 1112 (9th Cir. 2009) ....................................................4, 5

*Cunningham v. Beavers,*
  858 F.2d 269 (5th Cir. 1988) .......................................................15

*Dalton v. Specter,*
  511 U.S. 462 (1994)...................................................................18

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) ..................................................................... 5

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ................................................................................ 17

*DeVillier v. Texas,*
    601 U.S. 285 (2024) ................................................................................ 19

*Egbert v. Boule,*
    596 U.S. 482 (2022) ................................................................................ 19

*Ely v. Velde,*
    451 F.2d 1130 (4th Cir. 1971) ................................................................ 17

*FCC v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993) ................................................................................ 18

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ............................................................................. 7, 9

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) .................................................................................. 2

*Gabree v. King,*
    614 F.2d 1 (1st Cir. 1980) ....................................................................... 16

*Guertin v. Michigan,*
    912 F.3d 907 (6th Cir. 2019) ............................................................. 16, 17

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.,*
    816 F.3d 1241 (9th Cir. 2016) ...................................................... 11, 12, 13

*Hedgepeth ex rel. Hedgepeth v. Washington Metro. Area Transit Auth.,*
    386 F.3d 1148 (D.C. Cir. 2004) .............................................................. 15

*Jachetta v. United States,*
    653 F.3d 898 (9th Cir. 2011) .................................................................. 13

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ........................................................................ 10, 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................................ 4

*Lake v. City of Southgate*,
   No. 16-10251, 2017 WL 767879 (E.D. Mich. Feb. 28, 2017) ............................. 17

*Las Americas Immigrant Advoc. Ctr. v. Biden*,
   571 F. Supp. 3d 1173 (D. Or. 2021) .................................................................... 19

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ............................................................................... 14

*Lehnhausen v. Lake Shore Auto Parts Co.*,
   410 U.S. 356 (1973) ............................................................................................. 18

*Lignite Energy Council v. EPA*,
   198 F.3d 930 (D.C. Cir. 1999) .............................................................................. 8

*Louisiana v. Biden*,
   64 F.4th 674 (5th Cir. 2023) ............................................................................. 7, 8

*Louisiana v. Biden*,
   No. 22-30087, 2022 WL 866282 (5th Cir. Mar. 16, 2022),
   *app. to vacate stay denied*, 142 S. Ct. 2750 (2022) (Mem.) ............................... 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................... 6

*Massachusetts Board of Retirement v. Murgia*,
   427 U.S. 307 (1976) ............................................................................................. 15

*Matter of E. Coast Foods, Inc.*,
   80 F.4th 901 (9th Cir. 2023),
   *cert. denied*, 144 S. Ct. 1064 (2024) .................................................................... 5

*Michigan v. EPA*,
  576 U.S. 743 (2015)..................................................................................8

*Mississippi v. Johnson*,
  71 U.S. (4 Wall.) 475 (1867) ...........................................................18, 19

*Missouri v. Biden*,
  52 F.4th 362 (8th Cir. 2022),
  *cert. denied*, 144 S. Ct. 278 (2023)............................................................7

*Nat'l Lime Ass'n v. EPA*,
  233 F.3d 625 (D.C. Cir. 2000)....................................................................8

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
  538 U.S. 803 (2003)................................................................................11

*Nat'l Sea Clammers Ass'n v. City of New York*,
  616 F.2d 1222, 1237–38 (3d Cir. 1980), *vacated on other grounds sub nom.*
  *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981)....................................................................................17

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998)..........................................................................11, 12

*Polanco v. Diaz*,
  76 F.4th 918 (9th Cir. 2023),
  *cert. denied*, 2024 WL 2116278 (May 13, 2024) ..................................17

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020)..................................................................................2

*SF Chapter of A. Philip Randolph Inst. v. U.S. EPA*,
  No. C 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) ..................17

*Sierra Club v. Costle*,
  657 F.2d 298 (D.C. Cir. 1981)....................................................................2

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..................................................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).............................................................................5

*United States v. Flores-Villar*,
    536 F.3d 990 (9th Cir. 2008) .......................................................... 15

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)......................................................................... 16

*We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
    76 F.4th 130 (2d Cir. 2023) ........................................................... 15

*Whitman v. Am. Trucking Ass'n*,
    531 U.S. 457 (2001).......................................................................... 8

**STATUTES**

42 U.S.C. § 7412(d)(3) ......................................................................... 8

42 U.S.C. § 7607(b)(1) ....................................................................... 13

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure 12(b)(1)............................................. 5

Federal Rule of Civil Procedure 12(b)(6)............................................. 6

**EXECUTIVE ORDER**

Exec. Order No. 12866, 58 Fed. Reg. 51735 (Sept. 30, 1993).........2, 3, 4

**FEDERAL REGISTER**

87 Fed. Reg. 74702 (Dec. 6, 2022)...................................................... 9

88 Fed. Reg. 5558 (Jan. 27, 2023)...................................................... 9

89 Fed. Reg. 16202 (Mar. 6, 2024)..................................................... 9

89 Fed. Reg. 16820 (Mar. 8, 2024)............................................................................9

**GUIDANCE DOCUMENTS**

EPA Guidelines for Preparing Economic Analysis (2016) ............................4, 8, 12

OMB Circular A-4 (Nov. 9, 2023) ............................................................3, 4, 8, 12

**INTRODUCTION**

In their Amended Complaint, Plaintiffs allege that discounting—an analytical methodology that translates monetized future effects into present-value units—is unconstitutional when used by the Environmental Protection Agency (EPA) and the Office of Management and Budget (OMB) to assess benefits and costs of regulations aimed at reducing greenhouse gas (GHG) emissions. But Plaintiffs do not claim harm from discounting itself. Rather, they say that they are injured by regulations that EPA issues under the Clean Air Act, which, Plaintiffs contend, do not sufficiently limit GHG emissions and thus cause various climate-related injuries.

Attempting to bridge the gap between their legal objections to discounting and their alleged injuries, Plaintiffs suggest that EPA programmatically under-regulates GHG emissions *because* it discounts the future benefits of reducing those emissions. But EPA, like any agency, considers many factors in determining whether and how to regulate. Monetized, discounted future benefits may or may not weigh in the balance. Under the Clean Air Act, they regularly do not. And because Plaintiffs identify no instance in which EPA actually relied on discounted future benefits to justify less stringent restrictions on GHG emissions, the link between discounting and Plaintiffs' alleged climate-related injuries is necessarily speculative and attenuated. So too is any claim that a favorable judgment would redress Plaintiffs' harms, a conclusion compelled by binding precedent, as this Court has already determined. Plaintiffs therefore lack standing. For many of the same reasons that Plaintiffs lack standing, their abstract challenge to discounting, unbound from any concrete application, is also not ripe. And Plaintiffs cannot cure these fatal jurisdictional defects by framing their attack on discounting as a direct challenge to Clean Air Act regulations that allegedly rest on discounted future benefits, since any such challenges may be brought only in circuit courts. For

these reasons, the Court should again dismiss for lack of subject-matter jurisdiction, this time without leave to amend.

Even if their claims were justiciable, Plaintiffs fail to state claims for which relief can be granted. Plaintiffs allege that EPA's regulations violate the equal protection component of the Due Process Clause by discriminating against children, but children are not entitled to special protection under that clause, and, in any case, Plaintiffs offer no basis for concluding that EPA regulations are discriminatory. Plaintiffs likewise cannot assert an equal protection claim based on an implied fundamental right to a life-sustaining climate system because the Constitution does not confer such a right. And while Plaintiffs contend that the use of discounting violates the Take Care Clause of Article II, § 3, they have not stated and cannot state a claim directly under that provision. Plaintiffs have thus failed state a cognizable claim under any of the four counts in the Amended Complaint.

## BACKGROUND

The President oversees executive agencies' regulatory programs. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 213–14 (2020); *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 492, 496 (2010); *see also Sierra Club v. Costle*, 657 F.2d 298, 405 (D.C. Cir. 1981) (affirming "the basic need of the President and his White House staff to monitor the consistency of executive agency regulations with Administration policy"). Since the 1970s, every President has required some form of rulemaking review overseen by OMB.

Executive Order 12866 establishes the current framework for presidential oversight of agencies' regulatory programs. Exec. Order No. 12866, 58 Fed. Reg. 51735 (Sept. 30, 1993). It creates a regulatory-review process coordinated by OMB, and it directs agencies to follow certain principles. One such principle is that "to the extent permitted by law and where applicable," agencies should "propose or adopt a regulation only upon a reasoned determination that the benefits of the intended regulation justify its costs." Exec. Order No. 12866, § 1(b)(6). To

that end, agencies must assess anticipated costs and benefits before proposing any "significant" action. *Id.* § 6(a)(3)(B)–(C). Agencies may do this by preparing a regulatory impact analysis (RIA). RIAs are informational documents that, standing alone, have no independent legal effect. Thus, they are generally not subject to judicial review. Only in specific circumstances—such as when an agency chooses to justify a rule based on the analysis in its RIA—will that RIA be reviewable in the course of reviewing an agency's action. *See, e.g.*, *Cigar Ass'n of Am. v. FDA*, 5 F.4th 68, 76 (D.C. Cir. 2021).

Various OMB guidance documents, in particular Circular A-4, set out recommendations to help agencies develop RIAs that comply with Executive Order 12866. *See* OMB, Circular A-4 (Nov. 9, 2023).[1] One of the analytical methods described in Circular A-4 is a "benefit-cost analysis," in which "both benefits and costs" to society of a particular regulation "are expressed in monetary units to the extent feasible" and weighed against each other. OMB, Circular A-4 at 4; *see also id.* at 27 (agencies "should, if feasible, report the monetized value of the anticipated benefits and costs to society").

Because benefits and costs "often take place in different time periods," *id.* at 75, Circular A-4 offers guidance on using discount rates to express monetized future effects in present-value units, *id.* at 75–82. Discounting is the subject of a robust body of peer-reviewed literature. *See id.* Circular A-4 synthesizes that literature and provides "[s]everal reasonable approaches to discounting," *id.* at 75–76, including default discount rates for use in RIAs, *id.* at 76–77. But Circular A-4 does not require that agencies use a particular discount rate for their benefit-cost analyses. *Id.* at 77. Nor does Circular A-4 require agencies to woodenly interpret and apply the results of their benefit-cost analyses. Rather, it acknowledges that "[c]onducting high-quality analysis requires competent professional judgment" and

---

[1] https://www.whitehouse.gov/wp-content/uploads/2023/11/CircularA-4.pdf

1   that "[d]ifferent regulations may call for different emphases in the analysis." *Id.* at

2   4.

3          Circular A-4 also acknowledges that Congress may dictate how agencies

4   decide whether and how to regulate, and it disclaims any intent to "supplant any

5   analytic or other requirements set out in the statutes that authorize or require

6   agency action." *Id.* at 3.  So does Executive Order 12866, which provides, in § 9,

7   that "[n]othing in this order shall be construed as displacing the agencies' authority

8   or responsibilities, as authorized by law."

9          EPA's Guidelines for Preparing Economic Analyses (Guidelines) are

10  similarly non-prescriptive.[2]  The Guidelines summarize "analytical methodologies,

11  empirical techniques, and data sources that can assist in performing economic

12  analysis of environmental policies," but they do "not provide a rigid blueprint or a

13  'cookbook' for all policy assessments," which will vary depending on "case-

14  specific factors and will require professional judgment."  Guidelines at 1-2.  The

15  Guidelines also note that the mode of economic analysis described therein "cannot

16  be used in setting standards" under some statutes; and, in any case, is "but one

17  component in the decision-making process," which may turn on other

18  considerations including "enforceability, technical feasibility, affordability,

19  political concerns, and ethics, to name but a few." *Id.*

20                          **STANDARD OF REVIEW**

21         Federal courts are courts of limited jurisdiction, defined (within

22  constitutional bounds) by federal statute. *Badgerow v. Walters*, 596 U.S. 1, 7

23  (2022).  A plaintiff bears the burden of showing that a court has subject-matter

24  jurisdiction over the claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

25  375, 377 (1994); *see Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112,

26

27  ────────────────

28  [2] https://www.epa.gov/environmental-economics/guidelines-preparing-economic-analyses-2016

MEM. OF POINTS AND AUTHORITIES
IN SUPP. OF DEFS.' MOT. TO DISMISS          4

1121 (9th Cir. 2009) (party asserting a claim must show that there is Article III standing and that the claims are ripe).  If the plaintiff cannot meet this burden, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1064 (2024).  For purposes of a Rule 12(b)(1) motion, a court is not limited to the allegations in the complaint and may consider materials outside the pleadings.  *Colwell*, 558 F.3d at 1121.

A court should dismiss a complaint pursuant to Rule 12(b)(6) if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded material facts alleged in the complaint and construes them in the light most favorable to the plaintiff.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (cleaned up).  But a court need not accept as true a legal conclusion couched as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  When reviewing a motion to dismiss under Federal Rule 12(b)(6), a court is limited to the face of the complaint, materials incorporated by reference, and matters of judicial notice.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## ARGUMENT

The Court should re-dismiss this case under Rule 12(b)(1).  Plaintiffs' Amended Complaint suffers from many of the same threshold defects as their original Complaint and from new justiciability problems.  Because there is no non-speculative connection between the generalized practice of discounting and Plaintiffs' alleged climate-related harms, Plaintiffs cannot establish standing's prerequisites of causation and redressability.  Because Plaintiffs identify no EPA regulations that were based, even in part, on discounted future benefits of avoided

GHG emissions, they also cannot establish that their claims are ripe.  And because the courts of appeals have exclusive original jurisdiction over challenges to EPA actions under the Clean Air Act, Plaintiffs cannot remedy their standing and ripeness problems by attempting to challenge in district court the specific regulations that they say cause them harm.

Alternatively, the Court should dismiss the Amended Complaint under Rule 12(b)(6).  The sweeping substantive due process and equal protection rights that Plaintiffs assert lack any basis in constitutional text, history, or precedent.  And the Take Care Clause does not furnish a basis for affirmative relief in an Article III court.  Plaintiffs therefore fail to state a claim on which relief could be granted.

## I.  Plaintiffs' claims are non-justiciable.

### A.  Plaintiffs lack standing.

The "irreducible constitutional minimum of standing" requires Plaintiffs to show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).  Where, as here, a plaintiff is not "the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).  And the standing inquiry is "especially rigorous" where, as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

Even assuming for now that at least one Plaintiff has alleged a legally cognizable injury in fact based on climate-related harms, Plaintiffs cannot show that discounting caused the injury, or that an order declaring discounting unconstitutional would remedy their alleged harms.

1

**1.      Plaintiffs' alleged injuries are not fairly traceable to discounting.**

To "establish causation," Plaintiffs "must show a predictable chain of events leading from" the challenged government action to their alleged harms. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). Plaintiffs allege that because EPA uses discounting to prepare RIAs, it under-regulates GHG emissions, causing Plaintiffs' climate-related injuries. *See, e.g.*, Am. Compl. ¶¶ 1–2, 24–25, 121–23, 247–48. But, as the Fifth and Eighth Circuits recently held, the link between a single input in a benefit-cost analysis and a hypothetical, generalized regulatory outcome is too speculative and attenuated to support standing.

The courts reached those holdings in cases concerning Executive Order 13990, which directs agencies to account for the estimated "social costs of GHG"—the monetized damages associated with incremental increases in GHG emissions—when conducting internal regulatory reviews. *See Missouri v. Biden*, 52 F.4th 362, 365 (8th Cir. 2022), *cert. denied*, 144 S. Ct. 278 (2023); *Louisiana v. Biden,* 64 F.4th 674, 684 (5th Cir. 2023). Two state coalitions challenged estimates of the social costs of GHG, arguing, for standing purposes, that if agencies relied on those estimates, then the agencies would over-regulate GHG emissions and injure the states. *Missouri*, 52 F.4th at 368; *Louisiana*, 64 F.4th at 681. But, as here, the challengers identified no regulation that was based on the analytical input to which they objected. *Missouri*, 52 F.4th at 368; *Louisiana*, 64 F.4th at 680. And so the courts dismissed on standing grounds, holding, among other things, that "increased regulatory costs are not traceable to the [social cost of GHG] 'because agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action.'" *Missouri*, 52 F.4th at 370 (quoting *Louisiana v. Biden*, No. 22-30087, 2022 WL 866282, at *2 (5th Cir. Mar. 16, 2022) (per curiam), *app. to vacate stay denied*, 142 S. Ct. 2750 (2022) (Mem.)); *see also Louisiana*, 64 F.4th at 684.

1    That reasoning is apt here.  As with Executive Order 13990, both OMB's
2    Circular A-4 and EPA's Guidelines afford agencies "discretion in conducting their
3    cost-benefit analyses" in a manner "consistent with applicable law." *Louisiana*, 64
4    F.4th at 681; *supra* pp. 3–4.  Thus, neither document requires EPA to use any
5    particular mode of analysis when determining whether and how to exercise its
6    Clean Air Act authority.  And because many provisions of the Clean Air Act
7    preclude reliance on, or at least do not require, a formal benefit-cost analysis of the
8    type described in Circular A-4 and EPA's Guidelines, the Agency often does not
9    rely on such analyses to justify its regulations.

10   That is true, for example, when EPA sets National Ambient Air Quality
11   Standards (NAAQS) under 42 U.S.C. § 7409, where EPA cannot consider costs at
12   all, let alone weigh monetized discounted costs against monetized discounted
13   benefits.  *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 466 (2001).  Nor does
14   EPA rely on benefit-cost analyses when it acts under 42 U.S.C. § 7412(d)(3) to set
15   National Emission Standards for Hazardous Air Pollutants, which must be based
16   "exclusively upon the emissions reductions achieved by the best-performing
17   sources."  *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 640 (D.C. Cir. 2000).  Even
18   when EPA must consider costs in deciding whether a regulation is "necessary and
19   appropriate," the Supreme Court has expressly declined to require "a formal cost-
20   benefit analysis in which each advantage and disadvantage is assigned a monetary
21   value."  *Michigan v. EPA*, 576 U.S. 743, 759 (2015).  Lower courts have likewise
22   recognized that the Clean Air Act affords EPA a "great degree of discretion" in
23   balancing costs against an array of other enumerated statutory factors that may or
24   may not encompass the exhaustive scope of impacts reflected in the formal benefit-
25   cost analyses that EPA prepares for RIAs.  *Lignite Energy Council v. EPA*, 198
26   F.3d 930, 933 (D.C. Cir. 1999).  And the Agency has routinely eschewed reliance
27   on such analyses to weigh advantages and disadvantages of regulation under the
28   Clean Air Act.

1        The very regulations that Plaintiffs reference—Am. Compl. ¶¶ 163–96—

2   illustrate this practice.  For example, in EPA's 2022 Proposed Rule titled

3   "Reconsideration of the National Ambient Air Quality Standards for Particulate

4   Matter," the RIA for which is cited at Amended Complaint ¶ 178, the agency noted

5   that "[i]n NAAQS rulemaking, the RIA is done for informational purposes only,

6   and the proposed decisions on the NAAQS in this rulemaking are not based on

7   consideration of the information or analyses in the RIA."  88 Fed. Reg. 5558, 5563

8   (Jan. 27, 2023).  In its 2024 Final Rule reconsidering the Particulate Matter

9   NAAQS, *see* Am. Compl. ¶ 192, EPA again noted that "although an RIA has been

10  prepared, the results of the RIA have not been considered in issuing this final rule,"

11  89 Fed. Reg. 16202, 16373 (Mar. 6, 2024).  And in its Supplemental Proposed

12  Rule and Final Rule titled "Standards of Performance for New, Reconstructed, and

13  Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural

14  Gas Sector Climate Review"—*see* Am. Compl. ¶¶ 180, 182, 189—EPA explained

15  that it had "weighed the relevant statutory factors to determine the appropriate

16  standards and did not rely on the monetized benefits analysis" prepared pursuant to

17  Executive Order 12866 "for purposes of determining the [emissions] standards" in

18  its rule.  89 Fed. Reg. 16820, 17019 (Mar. 8, 2024); *accord* 87 Fed. Reg. 74702,

19  74843 (Dec. 6, 2022).

20       In sum, EPA's regulatory decisions under the Clean Air Act need not, and

21  often do not, reflect *any* reliance on RIA benefit-cost analyses that include

22  discounted monetized future benefits.  Plaintiffs' assertion that the use of

23  discounting in preparing those RIA analyses will necessarily cause EPA to under-

24  regulate GHG emissions is thus speculative and attenuated, at best.  Because the

25  standing doctrine's "causation requirement precludes speculative links" and "rules

26  out attenuated links," *All. for Hippocratic Med.*, 602 U.S. at 383, Plaintiffs fail to

27  show that their injuries are fairly traceable to EPA's reliance on discounting.

28

### 2.    Plaintiffs' harms are not redressable.

Plaintiffs also fail to show that the declaratory relief they seek is "substantially likely to redress their injuries." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020).  With respect to redressability, *Juliana* "is on all fours with this action."  Order, ECF No. 50 at 5.  There, as here, the plaintiffs claimed climate-related injuries allegedly due to government actions authorizing greenhouse gas emissions.  *Juliana*, 947 F.3d at 1164, 1169.  There, as here, the plaintiffs argued that the government's actions violated their rights under the Fifth Amendment.  *Id.*  And there, as here, the plaintiffs sought (*inter alia*) a declaration to that effect.  *Id.* at 1170.  But the Ninth Circuit ordered dismissal for lack of redressability, holding that the requested declaratory relief, while "undoubtedly likely to benefit the plaintiffs psychologically, is unlikely by itself to remediate their alleged injuries absent further court action."  *Id.*[3]

So too here.  As this Court already held, the link between a declaratory order on discounting and any future EPA action is "speculative."  Order at 6.  And it piles speculation upon speculation to assume that a favorable judgment "is substantially likely to remedy the injuries to Plaintiffs' 'bodies, their homes, and their daily lives.'"  *Id.* (quoting Pls' Opp'n to Defs' Mot to Dismiss, ECF No. 37, at 8 (MTD Resp.)).  Nothing in the Amended Complaint alters these conclusions.

---

[3] As previously noted, when the Ninth Circuit decided *Juliana*, it remanded to the district court with instructions to dismiss for lack of standing.  *See* Mem. & Points of Auth. in Supp. of Mot. to Dismiss 9–10 n.4, ECF No. 36 (MTD).  But on remand, the district court instead allowed the plaintiffs to file an amended complaint.  *Id.*  The United States then petitioned for writ of mandamus to enforce the Ninth Circuit's earlier mandate.  *Id.*  The Ninth Circuit granted that petition.  *See* EPA Notice Suppl. Auth., ECF No. 47.  It has since denied the plaintiffs' motion for rehearing or reconsideration en banc, with no judge noting a dissent, and without even requesting a response by the government.  Order, *United States v. United States Dist. Ct. for the Dist. of Or.*, No. 24-684 (9th Cir. July 12, 2024).

Because the Clean Air Act does not require, and in some cases prohibits, EPA's reliance on monetized future social benefits, an order declaring discounting unconstitutional is not substantially likely to alter how EPA exercises its statutory authority to regulate GHG emissions.  Nor is there any basis to presume that an order enjoining the practice of discounting—which Plaintiffs repeatedly describe only as a "thumb on the scale," Am. Compl. ¶¶ 2, 24, 151–52, 197—could "stop catastrophic climate change or even ameliorate [Plaintiffs'] injuries," which relate to global concentrations of GHG.  Order at 6 (quoting *Juliana*, 947 F.3d at 1171).  The Court should again dismiss on redressability grounds.

## B. Plaintiffs' facial challenge to discounting is not ripe.

For many of the same reasons that Plaintiffs lack standing, their claims are also not ripe.  The ripeness doctrine, which draws "both from Article III limitations on judicial power and from prudential reasons," *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003), prevents "courts from entangling themselves in abstract disagreements over administrative policies," *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241, 1252 (9th Cir. 2016) (cleaned up).  To analyze ripeness, courts consider: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *National Park Hosp. Ass'n*, 538 U.S. at 808.  "Absent a statutory provision providing for immediate judicial review," an agency regulation is not ordinarily considered ripe for review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him."  *Id.* (cleaned up).

The Supreme Court's decision in *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998), is instructive.  At issue was a Forest Service land management plan that established where, how, and how much timber could be harvested in a certain area.  *Id.* at 729.  But before the Forest Service could allow logging

activities under that plan, it would first have to undertake a separate administrative action that would itself be subject to notice and comment, and judicial review. *Id.* at 729–30. Thus, while the plan made "logging more likely," there remained "considerable legal distance between the adoption of the Plan and the moment when a tree is cut." *Id.* at 730.

Dismissing on ripeness grounds, the Court stressed that the plan itself did "not grant, withhold, or modify any formal legal license, power, or authority." *Id.* at 733. And if the Forest Service ever chose to permit logging based on the plan, then the plaintiffs would have "ample opportunity" to press their claims "at a time when harm is more imminent and more certain." *Id.* at 734. But resolving the case in the meantime "would require time-consuming judicial consideration of the details of an elaborate, technically based plan," "without benefit of the focus that a particular logging proposal could provide"—all to reach a merits judgment that would "turn out to have been unnecessary" if the agency were to modify or abandon its plan. *Id.* at 736. The Court declined to do so. *Id.* at 739.

That reasoning controls here. Discount rates—one potential input among many in regulatory decision-making—do not dictate any particular regulatory outcome. And neither Circular A-4 nor EPA's Guidelines mandate that EPA consider discounted future benefits when deciding whether and how to regulate GHG emissions. *Supra* pp.3–4; *see also Louisiana*, 64 F.4th at 678 ("OMB expressly does not bind agencies to its methodologies."). Thus, the "policy" to which Plaintiffs object, Am. Compl. ¶¶ 130–31, does not "command anyone"— certainly not Plaintiffs—"to do anything or to refrain from doing anything," *Ohio Forestry Ass'n*, 523 U.S. at 733. If EPA issues what Plaintiffs believe to be an insufficiently stringent regulation based on discounted future benefits, then Plaintiffs can assert their constitutional claims in a challenge to that regulation in the appropriate court. *See infra* p. 13. But "in the absence of a concrete application," Plaintiffs' objections to discounting are just the sort of "abstract

1  disagreements over administrative policies, that the ripeness doctrine seeks to
2  avoid." *Habeas Corpus Res. Ctr.*, 816 F.3d at 1254 (cleaned up).  The Court
3  should dismiss on ripeness grounds.

**C.  The Court lacks jurisdiction to consider challenges to EPA's Clean Air Act Regulations.**

6  Plaintiffs cannot bolster their argument for standing or ripen their claims by
7  asking this Court to review Clean Air Act regulations that, in their view, under-
8  regulate GHG emissions because of EPA's reliance on discounting.  That is
9  because challenges to "*any* . . . final action of the [EPA] Administrator" under the
10  Clean Air Act "may be filed *only* in" a circuit court "within sixty days" of the
11  grounds giving rise to suit.  42 U.S.C. § 7607(b)(1) (emphasis added).  That
12  mandate for timely, direct circuit-court review "displaces district court jurisdiction
13  under 28 U.S.C. § 1331." *Virginia v. United States*, 74 F.3d 517, 526 (4th Cir.
14  1996).  It also defines the scope of the United States' consent to suit and thus
15  precludes on sovereign immunity grounds district-court review of EPA's Clean Air
16  Act actions.  *See generally Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir.
17  2011) ("Before we may exercise jurisdiction over any suit against the government,
18  we must have a clear statement from the United States waiving sovereign
19  immunity, together with a claim falling within the terms of the waiver."); *see also*
20  MTD 5–7; Defs.' Reply In Supp. of Mot. to Dismiss 3–6, ECF No. 43 ("MTD
21  Reply").  For both reasons, this Court lacks subject-matter jurisdiction to consider
22  the EPA regulations that Plaintiffs say cause them harm.  What Plaintiffs are left
23  with, then, is a challenge to discounting *in vacuo*, which fails for the reasons noted
24  above.

**II.  Plaintiffs have failed to state a claim.**

26  Even if the Court concludes that it has jurisdiction, it should dismiss the
27  Amended Complaint because it fails to state any claim for which relief could be
28  granted.

**A.      The Amended Complaint fails to allege a cognizable equal protection claim.**

Plaintiffs have failed to state a cognizable equal protection claim.  The general rule is that government action that classifies certain groups of people differently from others "is presumed to be valid and will be sustained if the classification drawn by the [government action] is rationally related to a legitimate state interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citation omitted); *see City & Cnty. of San Francisco v. U.S. Postal Serv.*, 546 F. App'x 697, 698 (9th Cir. 2013); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588– 89 (9th Cir. 2008).  This general rule gives way only when a government action burdens a fundamental right protected by the Constitution or uses a suspect classification such as race.  Those government actions are subject to heightened scrutiny and will be sustained only if they are suitably tailored to a sufficiently important government interest.  *City of Cleburne*, 473 U.S. at 440.  Applying that framework, Plaintiffs' equal protection claims fail because there is no suspect classification or government action burdening a fundamental constitutional right.

First, Plaintiffs' equal protection claims fail at the threshold because the use of discounting does not employ any age-based classifications.  MTD 16–17.  Plaintiffs contend that discounting "is a weapon of intergenerational oppression" that harms children, "violates Plaintiffs' rights," and subjugates children's vital interests "in favor of the financial interests of other adults and corporations."  Am. Compl. ¶¶ 367, 371, 380.  But the use of discount rates to express monetized future effects in present value units in no way classifies children differently than adults.  And as noted, *supra* pp. 6–13, the monetized value of discounted future benefits may or may not weigh in the balance when EPA enacts the regulations that Plaintiffs allege harm them.  Thus, Plaintiffs have failed to identify any challenged action that classifies children differently from others, and their equal protection claims must fail for that reason alone.

But even if discounting did somehow classify children or future generations differently, the equal protection claims would still fail for several reasons. Contrary to Plaintiffs' contentions, strict scrutiny would not apply to the use of discounting because Plaintiffs cannot show that children or future generations are a suspect class in need of extraordinary protection. The Supreme Court has declined to treat classifications based on age as suspect and has thus declined to apply heightened scrutiny to government actions that classify by age. In *Massachusetts Board of Retirement v. Murgia*, the Supreme Court explained that "a suspect class is one saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." 427 U.S. 307, 313 (1976) (cleaned up). The Court rejected the claim that old age defines a "discrete and insular group" for purposes of equal protection analysis because old age "marks a stage that each of us will reach if we live out our normal span." *Id.* at 313–14 (cleaned up).

Consistent with *Murgia*, the Ninth Circuit (and other courts of appeals) have squarely rejected claims that children are a suspect class. *See United States v. Flores-Villar*, 536 F.3d 990, 998 (9th Cir. 2008) ("age is not a suspect class"); *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 158 (2d Cir. 2023) ("age is not a suspect classification."); *Hedgepeth ex rel. Hedgepeth v. Washington Metro. Area Transit Auth.*, 386 F.3d 1148, 1155 (D.C. Cir. 2004) (Roberts, J.) (noting that the "broad array of laws and government programs dedicated to protecting and nurturing children—combined with the large numbers of voters who are parents or otherwise concerned about children—belies the argument that children and their needs cannot attract the attention of the legislature"); *Cunningham v. Beavers,* 858 F.2d 269, 273 (5th Cir. 1988) ("No cases have ever held, and we decline to hold, that children are a suspect class."); *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980) (stating that young people have not

1  been "saddled with such disabilities, or subjected to such a history of purposeful
2  unequal treatment, or relegated to such a position of political powerlessness, as to
3  justify searching judicial scrutiny").

4          Second, Plaintiffs have failed to allege that any discrimination burdens a
5  fundamental right protected by the Constitution.  While there is no dispute that
6  climate change poses a serious threat and that addressing climate change will
7  require, among other things, the active involvement of the federal government,
8  strict scrutiny would not apply in this case because the Constitution does not confer
9  a fundamental right to a life-sustaining climate system.

10         The Supreme Court has repeatedly instructed courts considering novel due
11 process claims to "exercise the utmost care whenever . . . asked to break new
12 ground in this field, . . . lest the liberty protected by the Due Process Clause be
13 subtly transformed" into judicial policy preferences.  *Washington v. Glucksberg*,
14 521 U.S. 702, 720 (1997) (cleaned up).  More specifically, the Court has "regularly
15 observed that the Due Process Clause specially protects those fundamental rights
16 and liberties which are, objectively, deeply rooted in this Nation's history and
17 tradition."  *Id.* at 720–21 (cleaned up).  Plaintiffs' request that this Court recognize
18 an implied fundamental right to a life-sustaining climate system, Am. Compl.
19 ¶¶ 389, 400, Prayer for Relief (p. 108 ¶ 4), contradicts that directive, because such
20 a purported right is without basis in the Nation's history or tradition.

21         Consistent with the Supreme Court's direction, courts that have considered
22 claims seeking to establish a healthy environment or climate as rights protected by
23 the Constitution have rejected those claims.  *See Guertin v. Michigan*, 912 F.3d
24 907, 921–22 (6th Cir. 2019) (The "Constitution does not guarantee a right to live in
25 a contaminant-free, healthy environment."); *Nat'l Sea Clammers Ass'n v. City of
26 New York*, 616 F.2d 1222, 1237–38 (3d Cir. 1980) (finding it "established in this
27 circuit and elsewhere that there is no constitutional right to a pollution-free
28 environment"), *vacated on other grounds sub nom. Middlesex Cnty. Sewerage*

1  *Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *Ely v. Velde*, 451 F.2d

2  1130, 1139 (4th Cir. 1971) (observing that arguments "in support of a

3  constitutional protection for the environment" have not "been accorded judicial

4  sanction"); *cf. Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *4

5  (E.D. Mich. Feb. 28, 2017) ("[W]henever federal courts have faced assertions of

6  fundamental rights to a 'healthful environment' or to freedom from harmful

7  contaminants, they have invariably rejected those claims."); *SF Chapter of A.*

8  *Philip Randolph Inst. v. EPA*, No. C 07-04936 CRB, 2008 WL 859985, at *7 (N.D.

9  Cal. Mar. 28, 2008) (rejecting asserted rights to be free from climate change

10  pollution and to have a certain quality of life).  And Plaintiffs point to no relevant

11  contrary authority to support their claim that the Due Process Clause of the Fifth

12  Amendment supports an implied fundamental right to a life-sustaining climate

13  system.  Instead, they rely on cases based on state statutes or constitutions, foreign

14  law, or international law.  MTD Resp. 37.  But none of those cases invoked the

15  United States Constitution in support of the constitutional right Plaintiffs seek to

16  establish in this case.

17       At bottom, the Due Process Clause acts as a "limitation on the State's power

18  to act" rather than a "guarantee of certain minimal levels of safety and security."

19  *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023), *cert. denied*, 2024 WL

20  2116278 (May 13, 2024) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc.*

21  *Servs.*, 489 U.S. 189, 195 (1989)).  Plaintiffs thus cannot establish a cognizable

22  substantive due process claim based on an agency's alleged failure to provide

23  guaranteed levels of safety from harms due to climate change.  Because the

24  Amended Complaint fails to state a cognizable claim premised on a violation of

25  any recognized fundamental right, Count III should be dismissed.

26       Plaintiffs' equal protection claims, therefore, could only proceed if Plaintiffs

27  could establish that there was no rational basis for discounting, particularly EPA's

28  use of it in RIAs.  But rational basis review affords government actions "a strong

presumption of validity" and upholds the action "if there is any reasonably conceivable state of facts that could provide a rational basis" for the action. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993). A plaintiff's burden in attacking the rational basis of government actions is "to negative every conceivable basis which might support [them]." *Id.* at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

The Amended Complaint fails to meet this standard. It merely alleges, in conclusory fashion, that EPA and OMB discount the value of children's lives and allow dangerous levels of climate pollution, and that this is not rationally related to a legitimate government interest. Am. Compl. ¶ 383. The Amended Complaint offers no support for these conclusory allegations, which are afforded no weight in a Rule 12(b)(6) analysis. *Iqbal*, 556 U.S. at 678. As noted above, *supra* pp. 3–4, discounting is an analytical methodology that has been the subject of peer-reviewed literature and has long been used to translate monetized future effects into present value units. And Plaintiffs have not alleged facts from which the Court might conclude that discounting lacks a rational basis. *See id*. For all of these reasons, Counts I, II, and III should be dismissed for failure to state a claim.

**B.      Plaintiffs have not stated a claim under the Take Care Clause.**

Finally, Plaintiffs allege that EPA violated the Take Care Clause of Article II, § 3 by "act[ing] far in excess of [its] . . . legal authority" under the Clean Air Act. Am. Compl. ¶¶ 405, 413. This claim ignores the "well established" distinction between "claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 473–74 (1994). The former simply "are not 'constitutional' claims." *Id.* at 473. That is reason enough to dismiss Count IV.

Count IV fails for two more reasons. First, the Take Care Clause does not furnish a basis for affirmative relief in an Article III court because "the duty of the President . . . to see that the laws are faithfully executed" "is purely executive and

1  political," and not subject to judicial direction.  *Mississippi v. Johnson*, 71 U.S. (4

2  Wall.) 475, 499 (1867).

3      Second, Count IV also fails because the Take Care Clause supplies no

4  private right of action.  The Supreme Court recently stressed that "[a]t bottom,

5  creating a cause of action is a legislative endeavor."  *Egbert v. Boule*, 596 U.S.

6  482, 491 (2022) (cleaned up); *see also DeVillier v. Texas*, 601 U.S. 285, 291

7  (2024) ("Constitutional rights do not typically come with a built-in cause of action

8  to allow for private enforcement in courts.").  Heeding that admonition, several

9  district courts have recently refused to infer an implied cause of action under the

10  Take Care Clause.  *See, e.g.*, *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1178 (D.

11  Ariz. 2022) ("separation of powers principles and the Take Care Clause do not

12  provide Plaintiffs with causes of action"); *accord Las Americas Immigrant Advoc.*

13  *Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021); *City of Columbus v.*

14  *Trump*, 453 F. Supp. 3d 770, 800 (D. Md. 2020).  If it reaches the issue, this Court

15  should too.

16                              **CONCLUSION**

17      For the reasons explained above, the Court should grant Defendants' motion

18  and dismiss without leave to amend the Amended Complaint.

19

20  Dated: July 22, 2024                    TODD KIM

21                                          Assistant Attorney General

22                                          United States Deparment of Justice
                                            Environment and Natural Resources Division

23

24                                          */s/ Andrew S. Coghlan*
                                            ANDREW S. COGHLAN

25  Of Counsel:                             Environmental Defense Section
                                            SEAN C. DUFFY

26  DANIEL CONRAD                           Natural Resources Section

27  United States Environmental             Trial Attorneys
    Protection Agency
                                            Ben Franklin Station, P.O. Box 7611

28  Office of General Counsel

1   1200 Pennsylvania Ave., NW          Washington, DC 20044
2   Washington, D.C. 20460              Ph: (202) 532-3252 (Coghlan)
                                        Ph: (202) 305-0445 (Duffy)
3   DANIEL JACOBSON                     andrew.coghlan@usdoj.gov
4   General Counsel                     sean.c.duffy@usdoj.gov
    Office of Management and Budget
5   725 17th Street, NW                 *Attorneys for Defendants*
6   Washington, DC 20503

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,161 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 22, 2024

*/s/ Andrew S. Coghlan*
ANDREW S. COGHLAN
*Attorney for Defendants*