UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-10345-MWF (AGRx) | Date: February 11, 2025 |

Title: G. B., et al. v. United States Environmental Protection Agency, et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [62]; ENTRY OF JUDGMENT

Before the Court is a Motion to Dismiss (the "Motion") filed by Defendants United States, the United States Environmental Protection Agency (the "EPA"), Michael Regan in his official capacity as Administrator of the EPA, the Office of Management and Budget ("OMB"), and Shalanda Young in her official capacity as Director of OMB. (Docket No. 62). Plaintiffs Genesis B., et al. filed an Opposition on August 12, 2024. (Docket No. 64). Defendants filed a Reply on August 29, 2024. (Docket No. 67).

The Court has read and considered the papers on the Motion and held a hearing on **September 30, 2024**.

The Motion is **GRANTED** *without leave to amend* for lack of standing.

**I.    BACKGROUND**

The parties are by now quite familiar with the factual background of this action, which is fully set forth in the Order Granting Defendants' Motion to Dismiss (the "Prior Order"). (Docket No. 50). Therefore, the Court will not repeat all of those facts here but incorporates by reference the factual background from the Prior Order. The Court focuses this background on the ways in which the First Amended Complaint ("FAC") differs from the initial Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-10345-MWF (AGRx)          **Date:** February 11, 2025
**Title:** G. B., et al. v. United States Environmental Protection Agency, et al.

In the Prior Order, the Court granted Plaintiffs leave to amend the Complaint. The Court expressed skepticism that Plaintiffs could amend their Complaint to demonstrate redressability, but nonetheless granted leave to amend. (*Id.* at 8-9). The Court cautioned Plaintiffs that they would have "***one more chance*** to amend their complaint to address the standing issues discussed in this Order and any other potential deficiencies as raised" in Defendants' first Motion to Dismiss. (*Id.* at 9) (emphasis in the original).

Plaintiffs filed the FAC on May 20, 2024. (Docket No. 53). While in some respects the FAC is identical to the Complaint, it does differ in several ways. First, Plaintiffs add OMB and Shalanda Young as Defendants. (*Id.* at ¶¶ 128-29). In apparent response to the Prior Order, Plaintiffs name these parties because Plaintiffs now challenge OMB's Circular No. A-4. (*Id.* at ¶ 130).

Circular No. A-4 is a guidance document issued by OMB (*see, e.g.*, *id.* ¶¶ 169-70), which sets forth the Executive Branch policy on benefit-cost analysis ("BCA"). (*Id.* ¶ 130). Circular No. A-4 allegedly discriminates against children because it requires that "[a]ll future effects, regardless of what form they take (*e.g.*, changes to consumption, health, environmental amenities, etc.), should be discounted to reflect changes in valuation of impacts across time." (*Id.* ¶ 137). In compliance with Circular No. A-4, the EPA created the Guidelines for Preparing Economic Analyses (the "EPA Guidelines"), which is the "EPA's policy on performing BCA and other economic analyses of contemplated regulations in accordance with Circular A-4." (*Id.* ¶ 131). Plaintiffs refer to Circular No. A-4 and the EPA Guidelines collectively as the "Discounting Policies." (*Id.* ¶ 1).

Discounting is a method of comparing present and future value in weighing regulations. (*See, e.g.*, *id.* ¶ 143; Motion at 1 (describing discounting as "an analytical methodology that translates monetized future effects into present-value units")). Plaintiffs allege that the EPA utilizes the Discounting Policies in Regulatory Impact Analyses ("RIAs"), which "are the 'formal way' that EPA anticipates and evaluates the likely consequences of its regulatory actions allowing climate pollution. RIAs, including the BCAs, inform EPA about the effects of its regulatory actions and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-10345-MWF (AGRx)          **Date:** February 11, 2025
**Title:** G. B., et al. v. United States Environmental Protection Agency, et al.

influence how EPA develops regulations, chooses between regulatory alternatives, and adopts final regulations." (FAC ¶ 134).

In practice, the Discounting Policies require the EPA "to apply discount rates of 3% to 7% in regulatory impact analyses BCAs." (*Id.* ¶ 141). A forthcoming iteration of Circular No. A-4, which takes effect in 2025, reduces the "required" discount rate to 2%. (*Id.* ¶ 144). According to Plaintiffs, these seemingly small discount rates have an outsized impact because discount rates compound year over year. (*Id.* ¶ 153). As a result, long-term benefits are given less weight than short-term benefits, as "Discounting Policies put their thumb on the scale against urgent and ambitious regulatory programs to reduce climate pollution, and in favor of taking less ambitious actions in the present." (*Id.* ¶ 152).

Plaintiffs allege that the EPA has utilized the Discounting Policies in numerous RIAs from 1980 to the present (*id.* ¶¶ 162-200), despite the EPA's knowledge that current levels of atmospheric pollution are untenable and will have a disproportionate impact on children as climate change worsens (*id.* ¶¶ 224-353). Plaintiffs allege that they are already suffering from the negative effects of climate change, which caused

> Plaintiffs' homes being threatened with heat, fires, smoke, and floods; Plaintiffs' education being regularly and increasingly disrupted; Plaintiffs not being able to go outside daily because it is not safe and curtailing of their recreational and physical activities; Plaintiffs' religious, spiritual, and cultural practices being disrupted; and Plaintiffs facing long-term water and food insecurity. Defendants' policies and practices are ongoing and will cause Plaintiffs' injuries to worsen.

(*Id.* ¶ 379). In combination, therefore, Plaintiffs' theory of harm, as applied to the Discounting Policies, is as follows: 1) the EPA utilizes the Discounting Policies in RIAs as part of Plaintiffs' BCA practices mandated by OMB; 2) the Discounting Policies under-weight long-term benefits, which is a form of discrimination against children; and 3) the Discounting Policies, by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 23-10345-MWF (AGRx) | **Date:** February 11, 2025 |
| **Title:** G. B., et al. v. United States Environmental Protection Agency, et al. | |

underweighting long-term benefits, cause harm to Plaintiffs by failing to resolve the climate crisis.

Plaintiffs describe this as "ubiquitous and unequal treatment of Children" (*id.* ¶ 1), because the Discounting Policies will cause harms that are more likely to befall young people today, who are more likely to be alive during more climate-related cataclysms. (*Id.* ¶¶ 333-34).

Based on the foregoing allegations, the FAC asserts violations of (1) the Equal Protection Clause of the Fifth Amendment (Claims 1-3), and (2) the Take Care Clause of Article II (Claim 4). (*Id.* ¶¶ 362-423). And, though apparently mentioned almost nowhere else in the FAC outside of the Prayer for Relief, Plaintiffs appear to allege that the Discounting Policies violate the Due Process Clause of the Fifth Amendment. (*See id.*, Prayer for Relief, ¶¶ 1-2). In pursuing these claims, Plaintiffs seek declaratory judgment that Defendants' conduct violates these rights and permanent injunctive relief. Specifically, Plaintiffs pray for the following:

> 1. For a declaration that Defendants' Discounting Policies explicitly discriminate against Children, including these Plaintiffs, and violate the Equal Protection Clause, as incorporated into the Fifth Amendment of the U.S. Constitution through the Fourteenth Amendment, and the Due Process Clause.
>
> 2. For a declaration that Defendants' Discounting Policies and practices, in controlling the climate pollution that enters the Nation's air, discriminate against Children, including these Plaintiffs, and violate the Equal Protection Clause, as incorporated into the Fifth Amendment of the U.S. Constitution through the Fourteenth Amendment, and the Due Process Clause.
>
> 3. For a declaration that Defendants' Discounting Policies and practices in controlling the climate pollution that enters the Nation's air, discriminate against Children and Plaintiffs with respect to their fundamental rights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-10345-MWF (AGRx)          **Date:** February 11, 2025

**Title:** G. B., et al. v. United States Environmental Protection Agency, et al.

---

4. For a declaration that the fundamental right to a life-sustaining climate system is encompassed within the Fifth Amendment substantive due process fundamental right to life and is also inseparable from fundamental rights to liberty and property.

5. For a declaration that EPA has exceeded its delegated authority by its Discounting Policies and practices that allow unsafe levels of climate pollution that endanger Children, including Plaintiffs, to enter and accumulate in the Nation's air, in violation of the Take Care Clause.

6. For a permanent injunction preventing EPA from using the [Discounting] Policies and practices in its regulatory programs.

7. For a permanent injunction preventing EPA from using a discount rate higher than zero in its Regulatory Impact Analyses and benefit-cost analyses to quantify the future social, economic, health, or environmental benefits of reducing climate pollution, or the future social, economic, health, or environmental costs of emitting climate pollution.

8. For a permanent injunction requiring Defendants to conduct their Regulatory Impact Analyses, benefit-cost analyses, and regulatory programs in a manner that does not discriminate against Children.

9. Pursuant to 28 U.S.C. § 2202 and this Court's Article III authority, grant such other and further relief as the Court deems just and proper to redress the constitutional violations so declared and adjudged.

10. Award Plaintiffs their costs and reasonable attorneys' fees in this action.

(*Id.* at ¶¶ 1-10).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-10345-MWF (AGRx)                    Date:  February 11, 2025
Title:  G. B., et al. v. United States Environmental Protection Agency, et al.

Defendants seek to dismiss this action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.

## II.  LEGAL STANDARD

"Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is properly in federal court."  *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)).  In other words, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

"Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements. . . . The plaintiff must have suffered (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be addressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "To establish traceability, 'there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560).

These standing requirements derive from Article III's command that the federal courts hear only certain "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  By contrast, federal courts are not capable of hearing a "generalized grievance," which is an "'asserted harm' that is 'shared in substantially equal measure by all or a large class of citizens.' . . . Accordingly, a generalized grievance presents 'abstract questions of wide public significance.'"  *Microsoft Corp. v. U.S. Dep't of Just.*, 233 F. Supp. 3d 887, 901 (W.D. Wash. 2017) (first quoting *Warth*, 422 U.S. at 499; then quoting *Valley*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-10345-MWF (AGRx) | Date:  February 11, 2025 |
| Title:  G. B., et al. v. United States Environmental Protection Agency, et al. | |

*Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 475 (1982)).

### III. DISCUSSION

Defendants contend the Court should dismiss the entirety of this action for lack of subject matter jurisdiction and for failure to state a claim. (Motion at 2). Defendants raise three main arguments in challenging subject-matter jurisdiction: (1) Plaintiffs cannot demonstrate traceability; 2) Plaintiffs' challenge to the Discounting Policies is not ripe; and (3) this action fails to comply with the procedural requirements of the Clean Air Act, 42 U.S.C. §§ 7401–7671q. (*Id.* at 5-6). Because lack of traceability and the separate injury-in-fact requirement are dispositive and more easily dealt with under existing case law, the Court will focus on those arguments.

As was made clearer in the Opposition than the FAC itself, it seems that Plaintiffs allege two theories of harm. First, Plaintiffs claim they have suffered environmental harms—that the Discounting Policies result in under-regulation of greenhouse gas emissions, which burdens Plaintiffs by disrupting, *inter alia*, their education, recreation, and religious expression. (*See, e.g.*, FAC ¶¶ 31-107). Second, Plaintiffs claim they have suffered harms from discrimination—that the Discounting Policies facially discriminate against children, which injures Plaintiffs by "den[ying] equal treatment under law and their basic dignity of being valued equally to other groups of people." (*Id.* at ¶ 108). To sufficiently articulate that they have standing to bring this action, Plaintiffs must articulate traceability as to at least one of these two theories of harm.

Plaintiffs have failed to demonstrate that their injuries are fairly traceable to the Discounting Policies and for that reason, the FAC must be dismissed for lack of subject-matter jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-10345-MWF (AGRx)                    Date:  February 11, 2025
Title:  G. B., et al. v. United States Environmental Protection Agency, et al.

### A. **Plaintiffs fail to demonstrate traceability as to their environmental harms.**

Plaintiffs lack standing as to their environmental harms because they cannot demonstrate that their injuries are fairly traceable to the Discounting Policies. Plaintiffs provide a comprehensive list of RIAs that utilized then-current versions of the Discounting Policies.  (FAC ¶¶ 162-200).  But Plaintiffs fail to allege that Circular No. A-4 or the EPA Guidelines set out binding discount rates or practices.  In fact, Circular No. A-4 takes pains to inform agencies that BCAs should be context-sensitive in nature, and does not mandate a particular rate:  "You will find that you cannot conduct a good regulatory analysis according to a formula.  Conducting high-quality analysis requires competent professional judgment.  Different regulations may call for different emphases in the analysis . . . ."  (Circular No. A-4, https://www.whitehouse.gov/wp-content/uploads/2023/11/CircularA-4.pdf, at 4).

Similarly, the EPA Guidelines *do not* establish that economic analysis controls agency decision-making, and in fact establish the opposite: "It is important to note that economic analysis is but one component in the decision-making process and under some statutes it cannot be used in setting standards.  Other factors that may influence decision makers include enforceability, technical feasibility, affordability, political concerns, and ethics, to name but a few."  (EPA Guidelines, https://www.epa.gov/sites/default/files/2017-08/documents/ee-0568-50.pdf, at 1-2). The EPA Guidelines "do not provide a rigid blueprint or a 'cookbook' for all policy assessments.  The most productive and illuminating approaches for particular situations will depend on a variety of case-specific factors and will require professional judgment."  (*Id.*).

In combination, therefore, the Discounting Policies establish that they are guidance documents for the preparation of BCAs, when the EPA chooses to use them as part of its RIAs.  The theory of harm therefore bundles uncertainty on uncertainty—discounting may or may not be used as a tool and is only a single guiding factor when used.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-10345-MWF (AGRx)            **Date:** February 11, 2025
**Title:** G. B., et al. v. United States Environmental Protection Agency, et al.

     The Eighth and Fifth Circuits have both affirmed district court orders dismissing challenges to single regulatory inputs for lack of subject-matter jurisdiction. *See Missouri v. Biden*, 52 F.4th 362 (8th Cir. 2022) (dismissing challenge to social cost of greenhouse gas (SC-GHG) estimates for lack of traceability); *Louisiana v. Biden (Louisiana I)*, No. 22-30087, 2022 WL 866282 (5th Cir. Mar. 16, 2022) (staying a district court injunction and finding that "the increased regulatory burdens the Plaintiff States fear will come from the Interim Estimates appear untraceable because agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action (and the Plaintiff States do not challenge a specific regulation or action)").

     Plaintiffs attempt to distinguish these cases by relying on the fact that the challenges in those cases were to a draft update to Circular No. A-4, but this distinction is irrelevant. In *Louisiana*, for instance, the Fifth Circuit specifically wrote that the relevant Executive Order "does not itself mandate any particular regulatory action by a federal agency. In Plaintiffs' own words, these estimates would be used to merely 'justif[y]' harmful regulations. Such harms are traceable to possible agency actions, not to E.O. 13990 or the Interim Estimates." *Louisiana v. Biden*, 64 F.4th 674, 684 (5th Cir. 2023) (dismissing the action following the earlier stay). In *Missouri*, too, the holding was not determined by the Circular's draft form. *See Missouri*, 52 F.4th at 370 ("We agree with the Fifth Circuit that these alleged future increased regulatory costs are not traceable to the interim SC-GHG estimates 'because agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action . . . .'") (quoting *Louisiana I*, 2022 WL 866282, at *2).

     Plaintiffs further argue that it is inappropriate to consider the argument that the Discounting Policies are non-binding because that is a fact determination premature for evaluation on a motion to dismiss. But the provisions that establish that the Discounting Policies exist to provide guidance come from the Discounting Policies referred to in the FAC, and therefore the Court appropriately considers them now. Contrary to Plaintiffs' arguments at the hearing and in their Supplemental Opposition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-10345-MWF (AGRx)           **Date:**  February 11, 2025
**Title:**  G. B., et al. v. United States Environmental Protection Agency, et al.

filed October 2, 2024 (Docket No. 72), this consideration does not convert the Court's analysis into a determination of the merits of Plaintiffs' claims.

As an initial matter, the question of whether the Discounting Policies are binding or non-binding is easily resolved—they are non-binding, for the reasons described above. The Court is not required to accept Plaintiffs' legal conclusion—albeit cast in the form of a factual allegation—that the Discounting Policies are binding, particularly where that purported fact is undermined by the Policies themselves: "Courts do not accept the truthfulness of any legal conclusions contained in the complaint when assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1)." *Payne v. U.S. Bureau of Reclamation*, No. 17 CV-00490-AB (MRWx), 2017 WL 6819927, at *2 (C.D. Cal. Aug. 15, 2017) (citing *Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1139 (9th Cir. 2003)).

As Defendants note, the Plaintiffs' first Notice of Supplemental Authority does not change this analysis. In *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) (reversing this Court), the Ninth Circuit recognized that facial jurisdictional challenges under Rule 12(b)(1) are "adjudicated under the familiar 12(b)(6) standard." *Id.* at 1143 n.7 (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). The Ninth Circuit then clarified the applicable standard for ***factual*** attacks on jurisdiction under Rule 12(b)(1). *Id.* at 1144. As Defendants explain, they bring a facial challenge to jurisdiction, not a factual challenge. (*See, e.g.*, Defendants' Response to Plaintiffs' Notice of Supplemental Authority (Docket No. 76) ("[T]he United States brings a facial jurisdictional challenge that does not require the Court to consider anything that would be outside the scope of a Rule 12(b)(6) motion.")).

The Court agrees with Defendants' analysis. Not only does the claim that the Discounting Policies are binding constitute a legal conclusion, it is contradicted by the documents referenced in the FAC, which is appropriate for consideration under the standard applicable to a Rule 12(b)(6) motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-10345-MWF (AGRx)          Date: February 11, 2025
Title: G. B., et al. v. United States Environmental Protection Agency, et al.

    At the hearing, several of Plaintiffs' arguments were more concerned with the merits of their Equal Protection claim than with the standing issues addressed here. However, Plaintiffs argued that the Declarations of their experts—and specifically the Declaration of Dr. Joseph Stiglitz (Docket No. 64-6)—establish that the Discounting Policies impact the ultimate form that environmental regulations take, and therefore strengthen the causal connection between Discounting Policies and their alleged harmful effects. But Dr. Stiglitz's Declaration was fundamentally concerned with providing an economic argument that the discount rate should be *lower* than it is now (and perhaps even negative). (*Id.* ¶ 28). Dr. Stiglitz contemplates an appropriate discount rate being "very low" or "no discount" or "negative." (*Id.*).

    Therefore, the Court finds nothing in Dr. Stiglitz's Declaration that strengthens the causal link between the Discounting Policies and the adoption of certain regulations, and certainly nothing to suggest that the Discounting Policies are binding. (Furthermore, that Dr. Stiglitz contemplates and advocates in part for "very low" discount rates suggests that Plaintiffs' position that the mere existence of discount rates works a stigmatic harm is confused). The problem for standing purposes is not whether the discount rates are too high or low, but whether they are binding policy or comparatively abstract guidance.

    As to the other Declarations, the Court disregards the Declaration of Andrew Bradt, whose Declaration—based on his experience as a law professor—is simply an expert legal opinion. (*See generally* Declaration of Andrew Bradt (Docket No. 64-2)). The Declaration of Dr. Elizabeth Pinsky (Docket No. 64-3) concerns climate change's health effects on children and is irrelevant to the resolution of the Motion. The Declaration of Dr. Liliana Doganova is concerned with its thesis that discounting policies rely on "assumptions about the value of different temporalities . . . and . . . produce[] political effects." (Docket No. 64-4 ¶ 3). The Declaration establishes that the EPA has at times used the Discounting Policies in regulations that have become binding. (*See id.* ¶ 15). Taken as true, however, this Declaration does not address the central problem the Court finds with Plaintiffs' theory of standing—that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-10345-MWF (AGRx)          **Date:** February 11, 2025
**Title:** G. B., et al. v. United States Environmental Protection Agency, et al.

---

Discounting Policies have been utilized as a tool in ultimately issued regulations is not the same as credibly alleging that the EPA is **bound** to utilize the Discounting Policies.

Plaintiffs also tried to distinguish this case from those cases that define the federal courts' approach to traceability, and most notably *Allen v. Wright*, 468 U.S. 737 (1984). Plaintiffs appeared to argue that there, **the children** did not allege that they were subject to discriminatory treatment, and that if they had, perhaps the outcome would have been different. Plaintiffs further argued that the harm there was less direct, because there was an attenuated causal link between tax exemptions for private schools and Equal Protection harms. The Court does not find this argument compelling. If anything, the causal link in *Allen* was **less** attenuated than the link here, because the tax exemptions for private schools were incontrovertibly binding law.

Accordingly, Plaintiffs cannot demonstrate traceability as to their environmental harms.

### B. Plaintiffs fail to demonstrate they have suffered an injury-in-fact as to their discrimination harms.

In their Opposition, Plaintiffs largely drop their arguments about causation as to the environmental harms, and instead focus their causation argument almost entirely on the alleged discrimination harms. (*See* Opposition at 7-11). But in order for the Court to find that there is traceability as to the alleged facial discrimination, the Court must find that unequal treatment under the law has occurred. Plaintiffs acknowledge as much in their statement that, in the equal protection context, "unequal treatment under the law is the injury." (*Id.* at 8).

Defendants accurately contend that Plaintiffs' alleged discrimination harms fall short for being generalized grievances. The "rule against generalized grievances applies with as much force in the equal protection context as in any other." *Arakaki v. Lingle*, 477 F.3d 1048, 1060 (9th Cir. 2007) (quoting *United States v. Hays*, 515 U.S. at 743). Plaintiffs' discrimination claims fail for a straightforward reason: They have not, and cannot, allege that the Discounting Policies are discriminatory in nature.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-10345-MWF (AGRx)                    Date:  February 11, 2025
Title:  G. B., et al. v. United States Environmental Protection Agency, et al.

Because the Discounting Policies are not capable of regulating the public, Plaintiffs claim that the Discounting Policies work a stigmatic harm on them. (Opposition at 5). However, as Defendants argue, and as Plaintiffs themselves allege, the Discounting Policies and the RIAs they support are not analyzed at an individual level, but instead anticipate societal harms and benefits. (*See* Opposition at 5-6; FAC ¶ 121 ("EPA continues through its Discounting Policies and practices to allow and systematically permit large amounts of climate pollution to enter the Nation's sovereign air space.")). The stigmatic harm does not derive from any mention of children in the Discounting Policies, but on the allegation that the Discounting Policies result in a suboptimal rate of greenhouse gas emissions in the future, which will disproportionately impact present-day children.

These climate related harms will be experienced relatively equally by all people—both in the United States and around the world—who are alive at the time of their impacts. Present-day children will age and become adults, and new children will be born. Indeed, much of the harm that will allegedly befall the Plaintiffs will occur when they are adults. The FAC does not establish how a stigmatic harm is worked upon those who will soon reach the age of majority, including certain Plaintiffs in this case who are very nearly eighteen years of age, begging the question of how in particular the Discounting Policies work a discriminatory harm against an individual aged 17 years and 364 days and not an individual aged 18 years. The stigmatic harms here are therefore abstract in nature. "Recognition of standing in such circumstances would transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Allen*, 468 U.S. at 756 (quoting *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 687 (1973)). Because the stigmatic injury is independent of the alleged environmental harms, recognizing standing for an alleged violation of a personal constitutional right in these circumstances would have the potential to unsettle nearly every form of agency rulemaking, as Circular No. A-4 is relied upon by many more agencies than the EPA. (*See, e.g.*, FAC ¶ 128 ("OMB is responsible for Circular No. A-4, which is the policy that directs Federal agencies, including EPA, in their regulatory analysis of benefits and costs and the use of discount rates.")). And Plaintiffs articulate no reason why this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-10345-MWF (AGRx)                Date:  February 11, 2025
Title:  G. B., et al. v. United States Environmental Protection Agency, et al.

rationale would not be equally applicable to similar temporal choices in rulemaking and legislation:  Sunset provisions and delayed operative dates appear equally challengeable under Plaintiffs' logic, because they are more likely to affect present-day children.  *Cf. Valley Forge Christian Coll.*, 454 U.S. at 768 n.26 (determining that, in a claim premised on an alleged Establishment Clause violation, "a principled consistency would dictate recognition of respondents' standing to challenge execution of every capital sentence on the basis of a personal right to a government that does not impose cruel and unusual punishment").

In essence, this claim must fail because it is not about a stigmatic injury at all, but rather about displeasure with the EPA's economic analyses in assessing the impacts of future harms.  But such wide-ranging complaints are the very definition of a "generalized grievance," which "presents 'abstract questions of wide public significance.'"  *Microsoft*, 233 F. Supp. 3d at 901 (quoting *Valley Forge Christian Coll.*, 454 U.S. at 475).  Such grievances are simply not judicially cognizable.

At the hearing, Plaintiffs argues that children are a discrete class who will suffer the negative effects of climate change for a longer period of time, and that the Discounting Policies express a time preference against children that works a stigmatic harm.  But that argument concedes that the negative effects of climate change will be felt by all, and Plaintiffs failed to present the Court with any authority for the proposition that dealing with a societal problem—albeit one of great magnitude—for a longer period of time transforms a generalized grievance into a particularized harm.

Finally, the Court notes that the final two of the three Notices of Supplemental Authority filed by Plaintiffs (Docket Nos. 77, 78) are inapposite and do not affect the Court's analysis.  In the first, Plaintiffs recount that the Montana Supreme Court recently found standing in a similar case involving youth plaintiffs' challenge to a Montana Environmental Policy Act provision that state environmental reviews may not assess regional, national, or global impacts.  *Held v. Montana*, 560 P.3d 1235, 1243 (Mont. 2024).  That case analyzed standing requirements under the Montana state constitution and concerned a wholly different governmental policy than the one here.  *See id.* at 1249 (stating that, under Montana law, "a plaintiff has legal standing to assert

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-10345-MWF (AGRx)                    Date:  February 11, 2025
Title:  G. B., et al. v. United States Environmental Protection Agency, et al.

a claim if (1) the claim is based on an alleged wrong or illegality that has caused, or is likely to cause, the plaintiff to suffer a past, present, or threatened injury to person, property, *or* exercise of civil or constitutional right and (2) the harm is of a type that legal relief can effectively alleviate, remedy, or prevent.").  As already described, the Article III standing requirement is quite different.  Additionally, the challenged policy there was part of the Montana Environmental Protection Act and explicitly forbade certain types of review by Montana state authorities.  *Id.* at 1243.  That too is quite different from the type of non-binding administrative guidance challenged here.

The third Notice of Supplemental Authority (Docket No. 78) is irrelevant.  It concerns Executive Order Number 14154, entitled *Unleashing American Energy*.  The Notice states that the Executive Order "further support[s] Plaintiffs' Article III standing and confirm[s] material questions of fact that should not be resolved at this stage of the proceedings, but rather on the merits." (*Id.* at 1).  Plaintiffs claim that the Executive Order establishes that the social cost of carbon calculation, "which is determined by the discount rate, presently causes harm to the economy and the environment." (*Id.*).  Plaintiffs also claim that the Executive Order is "evidence that discriminatory economic policies can be eliminated with the aim of redressing their harmful effects." (*Id.*).  The Executive Order, however, does not state that the purported harm comes from the Discounting Policies, and instead states that agencies should evaluate "appropriate discount rates" without mandating any rates in particular.  Exec. Order No. 14154, *Unleashing American Energy*, 90 Fed. Reg. 8353 (Jan. 20, 2025).  It is difficult to see how the Executive Order supports Plaintiffs' contentions in any realistic way.

Accordingly, the Court concludes that Plaintiffs lack both redressability and injury-in-fact, and the Motion is therefore **GRANTED**.

## IV.    LEAVE TO AMEND

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-10345-MWF (AGRx)         Date: February 11, 2025
Title: G. B., et al. v. United States Environmental Protection Agency, et al.

Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

     Here, the fourth and fifth factors—futility of amendment and the Plaintiffs' previous amendment—weigh in favor of dismissing the action without leave to amend. Further, in the Prior Order, the Court expressed skepticism that Plaintiffs could amend the Complaint to establish standing. (Prior Order at 8-9). "Any future successful motion to dismiss will be granted without leave to amend." (Prior Order at 9). The Court accordingly granted Plaintiffs ***one more chance*** to amend the Complaint. The Court now finds that further amendment would be futile. The FAC demonstrates that no matter how many opportunities for amendment Plaintiffs receive, they cannot overcome the structural lack of injury-in-fact and traceability as to their claims. Particularly given that the Discounting Policies do not prescribe a discount rate that the EPA must use and because Plaintiffs challenge no specific policies, it is difficult to imagine how Plaintiffs could ever sufficiently allege standing on these facts.

## V.    CONCLUSION

     Underlying this technical analysis of standing is the common-sense proposition that the President and Congress – not unelected judges – have the obligation to make decisions so fundamental to the economy. Ultimately, this obvious conclusion is what motivated the majority of the panel in *Juliana v. United States*, 947 F.3d 1159, 1171-75 (9th Cir. 2020). Regardless how impassioned or well-written it is, the dissent is not the law. *Id.* at 1175-91 (Staton, J., dissenting).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-10345-MWF (AGRx)                **Date:** February 11, 2025

**Title:** G. B., et al. v. United States Environmental Protection Agency, et al.

Accordingly, the MTD is **GRANTED** *without leave to amend*, and the action is **DISMISSED**.

IT IS SO ORDERED.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.